The plaintiffs, Ralph Beavers and nine other residents of Walker County, appeal from a judgment entered by the Walker Circuit Court in favor of the defendants, the County of Walker (the "County"), the Walker County Commission (the "Commission"), the Walker County Solid Waste Disposal Authority (the "Authority"), and Browning-Ferris Industries of Alabama, Inc. ("BFI"). The plaintiffs had sought a declaratory judgment and preliminary and permanent injunctions to enjoin the defendants from constructing a sanitary solid waste landfill on 680 acres in eastern Walker County, near Dora, adjacent to the unincorporated Bryan community. For the reasons expressed below, we reverse the trial court's judgment in favor of the defendants.
 I. The Facts and Procedural History A. Background
The enactment of the Solid Waste Management Plan Act, Ala. Code 1975, § 22-27-40 et seq., in 1989 and the adoption of new regulations by the federal Environmental Protection Agency ("EPA") regarding solid waste landfills created a dilemma for Walker County and its governing body, the Commission. The Solid Waste Management Plan Act, an amendment to the Solid Wastes Disposal Act,[1] required that by December 1990 each county develop for the management of solid waste generated within its boundaries a written plan that would meet the regulatory requirements of the federal Resource Conservation and Recovery Act ("RCRA").[2] Ala. Code 1975, § 22-27-47. Further, the County's only sanitary solid waste landfill had little remaining capacity, did not meet the new EPA regulations for solid waste landfills ("Subtitle D requirements"),[3] and, thus, could no longer accept waste once those regulations went into effect on October 9, 1993.
 B. The Commission and the Authority
Pursuant to the Solid Waste Disposal Authorities Act, Ala. Code 1975, § 11-89A-1 et seq., the Commission incorporated the Walker County Solid Waste Disposal Authority on August 23, 1990, and the commissioners appointed themselves directors of the Authority on September 17, 1990. The Authority was organized as a public corporation with powers including, but not limited to, the ability to issue and sell bonds in order to raise the funds necessary to lease, purchase, or construct a new solid waste landfill in Walker County, or to enter into contracts for disposal of Walker County's waste. § 11-89A-8. At about the same time the Commission obtained the services of an engineering consulting *Page 1368 
firm to assist with the development of its solid waste management plan.
The consulting firm estimated that it would cost the County approximately $ 2.5 to $ 3 million to construct a landfill meeting Subtitle D design requirements, approximately $ 750,000 per year to operate the landfill, and greater than $ 1 million more for post-closure monitoring requirements. Based on these numbers, the Commission estimated a "tipping fee" of approximately $ 25 per ton of solid waste deposited at the proposed landfill, not including the costs of residential collection. The Commission considered the cost to the County to operate its own Subtitle D landfill to be too great for that option to be feasible, given the fact that a majority of the County's residents already refused to use the waste disposal service the County was then operating, for which only a small fee was charged.
 C. BFI's Regional Landfill Proposal
BFI approached the Commission with a proposal to construct a privately owned and operated landfill in the County that would be allowed to accept sanitary solid waste from both Walker County and nearby counties; BFI proposed that, in return, the County would receive free waste disposal for up to 20 years. The Commission was receptive to the proposal because it involved no expenditure by the County, and preliminary negotiations between BFI and the Commission began in August 1990.
 D. The Commission's Proposed Solid Waste Management Plan
In September 1990, an outline of a landfill agreement was developed between BFI and the Commission and the idea of a privately owned landfill was included in the County's proposed solid waste management plan. The plan stated that the Commission had "secured a preliminary agreement with a private firm" for that firm to construct a sanitary solid waste landfill in eastern Walker County near the Burnwell community. The plan did not provide the name of the private company — BFI; nor is the named Burnwell site the same as the Bryan site finally chosen by BFI, although they are both located in the same part of the County.
The Commission set a meeting with the mayors of Walker County's municipalities for September 17 to discuss the proposed plan. Public notice of the meeting was published on September 6 in the Daily Mountain Eagle, a newspaper of general circulation in the County. All of the mayors who attended agreed to participate in the County's proposed plan, rather than prepare individual plans for their municipalities. The meeting was also attended by members of the general public, including one of the plaintiffs in this action.
The next step for the Commission in formulating a solid waste management plan was meeting the statutory public notice and comment requirements of the Solid Waste Management Plan Act.
 "Prior to final adoption . . . of a [solid waste management] plan, the jurisdiction shall afford the public an opportunity to present data, views and arguments thereon, orally or in writing. The public comment period shall be no less than 30 days in length and shall include at least one public hearing. Notice of the public comment period shall be published at least once in a newspaper of general circulation in the jurisdiction and in the official gazette, if any, in the jurisdiction. Notice of the inclusive dates of the public comment period and date of the public hearing may be combined in the same publication. Notice of the time and place of the public hearing shall be published at least 30 days, but not more than 45 days prior to the date of said hearing. Any published notice shall contain a brief description of the proposed plan, and shall identify a location where copies of the plan shall be available for inspection during normal business hours, and shall also identify a contact person. . . ."
§ 22-27-47(f). The Commission published notice of an October 15, 1990, hearing on the proposed plan on September 12, in theDaily Mountain Eagle. The notice stated that a public hearing was to be held on the County's proposed solid waste management plan and provided the location where copies of the plan could be reviewed and also provided the name of a contact person. The notice did not *Page 1369 
provide any specific information regarding BFI's proposal to construct a privately owned regional sanitary solid waste landfill. However, the record shows that several of the plaintiffs were present at the October 15 hearing and commented on the plan and on BFI's proposal, which was discussed at the hearing.
 E. The Landfill Agreement
On October 19, 1990, the Authority and BFI signed an "Agreement for Development and Use of Sanitary Landfill." According to the agreement, the landfill was to be located adjacent to the Bryan community, rather than the Burnwell community as the proposed plan has indicated. The BFI landfill was to receive sanitary waste from both Walker County and eight nearby Alabama counties.[4] It would not receive hazardous waste, nor would it receive out-of-state waste of any kind. The Authority would be paid a "host fee" of $ 1 per ton of waste the landfill received from outside the County. The agreement between BFI and the Authority was also signed by the Commission, for the purpose of acknowledging its agreement to a limited number of sections of the document.
However, § 22-27-48(a), part of the Solid Waste Management Plan Act, requires that "[a]ny determination by the local governing body [such as the Commission on a] proposal to contract for any services described in the solid waste management plan, shall be made in a public meeting only after public notice of such application or proposal and an opportunity for public comment is provided." That section further states:
 "In providing public notice of any application or proposal regarding any services described in the solid waste management plan, the local government shall at a minimum hold at least one public hearing thereon, notice of the time and place of which shall be given by one publication in a newspaper of general circulation in the municipality and in the official gazette, if any, of the jurisdiction. Furthermore, such notice shall be given at least 30 days but not more than 45 days prior to the proposed date of said hearing. Each notice published in compliance with this section shall contain at a minimum a description of the proposed action to be considered, its relevance to and consistency with the local solid waste management plan and shall identify a contact person from whom interested persons can obtain additional information and can review copies of both the local plan and the application or proposal to be considered."
Section 22-27-48(a). (Emphasis added.) Although the Commission, on September 12, 1990, had published a public notice before it entered the agreement with BFI regarding the proposed solid waste management plan, that notice did not specifically state that the Commission was considering entering into a contract for services with a waste management firm for development of a private landfill in Walker County.[5] The Authority made a public announcement of the agreement with BFI at a press conference and in a news release dated October 19.
 F. The Commission's Adoption of the Proposed Plan
The October 19, 1990, announcement of the agreement with BFI to build a regional sanitary solid waste landfill at the Bryan site caused a great public outcry. The Commission received approximately 600 letters regarding the proposed landfill from residents of the Bryan area. In late October a group of residents, including many of the plaintiffs, joined to form the "Concerned Citizens for a Better Environment" ("Concerned Citizens"), in order to oppose construction of a regional landfill in Walker County and, especially, to *Page 1370 
oppose construction of such a landfill in the area where they lived.
On November 1, 1990, the Commission held another public hearing to respond to complaints and rumors, particularly those the Commission believed had been generated by the "Concerned Citizens." Many members of that group, including several plaintiffs, attended the meeting and voiced their opposition to BFI's proposed landfill. Members of the Commission and representatives of BFI responded to citizen comments and explained why the Bryan landfill site had been chosen.
On November 19, during a regular meeting, the Commission approved and adopted the Walker County Solid Waste Management Plan, which incorporated the agreement with BFI. Several plaintiffs and members of "Concerned Citizens" attended the meeting. Thereafter, the Commission submitted the plan to the Alabama Department of Environmental Management ("ADEM"), which approved the plan on February 19, 1991.
 G. BFI's Application for Local Approval
Section 22-27-48(a) of the Solid Waste Management Plan Act requires that the approval of the local governing body for any activities described in the solid waste management plan be obtained before and "in addition to any other approvals required from other regulatory authorities." ADEM cannot even consider an application for a permit to construct or modify a solid waste disposal facility until such "host government approval" — or "local approval" — is obtained. § 22-27-48(a);Ex parte Lauderdale County, 565 So.2d 623 (Ala. 1990);Fitzjarrald v. City of Huntsville, 597 So.2d 1378
(Ala.Civ.App. 1992). Local approval of a solid waste landfill site is also mandated by § 22-27-5(b). Accordingly, on June 28, 1991, a subsidiary of BFI, Walker County Disposal, Inc., applied to the Commission for a permit to establish a sanitary solid waste landfill at the Bryan site.
On July 3, 1991, the Commission published notice of an August 5 public hearing on BFI's solid waste landfill permit application, meeting the statutory public notice requirements of § 22-27-48(a), part of the Solid Waste Management Plan Act. The commissioners did not personally attend the hearing, but appointed a hearing officer who took comments from the public. Several hundred persons attended, and more than two dozen voiced their opposition to the Bryan landfill site, including some of the plaintiffs in this action. The hearing was recorded by a court reporter, and a transcript produced for the commissioners.
Section 22-27-48(a) also sets forth six special criteria that the local governing body "shall consider" in "determining whether to recommend approval of the proposed issuance of . . . a new . . . solid waste management site."[6] On August 19, 1991, by a vote of 4 to 1, the Commission approved BFI's application for local approval of the Bryan site.[7] The Commission also passed a formal resolution stating that it had considered the six factors mandated by § 22-27-48(a) before granting approval.
Thereafter, the landfill proposal was forwarded to the Birmingham Regional Planning Commission ("BRPC"), as required by § 22-27 — 48(b). The BRPC found it consistent with the region's waste disposal requirements and issued a "letter of consistency" on September 20, 1991. Finally, ADEM approved BFI's application for a solid waste landfill permit on March 12, 1993. *Page 1371 
 H. Litigation
On November 14, 1991, the plaintiffs,[8] residents of the Bryan community, filed their complaint. It alleged (1) that the Commission had granted local approval of the Bryan landfill site in violation of the due process rights of the plaintiffs and other Walker County residents; (2) that in granting local approval the Commission had acted in an arbitrary and capricious manner, because, the plaintiffs said, it had failed to consider the factors mandated by § 22-27-48(a) (part of the Solid Waste Management Plan Act) and had failed to comply with its solid waste management plan; (3) that the Commission had violated Alabama's Competitive Bid Law, § 41-16-51(d), by entering into a contract with BFI for BFI to construct a regional solid waste landfill to receive Walker County's and other counties' waste, without open competitive bidding; and (4) that the contract entered into between the Commission and BFI violates public policy because, the plaintiffs said, it creates several affirmative duties on the part of the Commission, including the duty to cooperate with and assist BFI in obtaining local approval, thus, the plaintiffs say, removing from the Commission the discretion mandated to it by §22-27-5(b) and § 22-27-48(a).
The defendants answered and counterclaimed on December 18, 1991, seeking a determination that the Commission's grant of "local approval" was in accordance with due process and with the Solid Waste Management Plan Act. The plaintiffs answered the counterclaim on December 31, 1991, and on October 2, 1992, they amended their complaint to add an additional count alleging that the Solid Waste Disposal Authorities Act was unconstitutional because, the plaintiffs say, § 11-89A-18, a part of that Act purports to exempt the contracts of such authorities from the requirements of Alabama's Competitive Bid Law.
On March 17, 1993, shortly after ADEM had granted BFI a permit to construct the Bryan sanitary solid waste landfill and construction at the site had begun, the plaintiffs moved for a temporary restraining order and for a preliminary injunction ordering BFI to halt construction. At an April 5 hearing the trial court heard oral testimony and received exhibits; the judge denied the plaintiffs' motion on April 8.
On April 7, 1993, both the plaintiffs and the defendants moved for a summary judgment. The court held a hearing on April 22, at which both sides agreed to submit the case to the trial court for a final judgment based on the pleadings, the briefs, the exhibits, the affidavits, and the oral testimony received by the trial court. On May 12, the court entered a final judgment in favor of the defendants.
On June 11, 1993, the plaintiffs filed a "Motion to Alter, Amend, and Vacate Judgment and Order and For a New Trial." The trial court held a hearing on this post-judgment motion on August 3, 1993, and denied it on August 31. The plaintiffs appealed to this Court on September 7, 1993. In October 1993, BFI completed construction of the Bryan sanitary solid waste landfill and began waste disposal operations at the site.
 II. Issues
The plaintiffs have made many arguments on appeal: (1) that the language used in the contract entered by the Authority, the Commission, and BFI granted an exclusive franchise to BFI, and therefore, that the contract should have been competitivelybid, (2) that all contracts entered into by local governments pursuant to the Solid Wastes Disposal Act are subject to Alabama's Competitive Bid Law requirements and, thus, must be competitively bid; (3) that a provision of the Solid Waste Disposal Authorities Act that they say purports to exempt such authorities from the Competitive Bid Law does not exempt the Commission; (4) that the Solid Waste Disposal Authorities Act is unconstitutional because, they say, it purports to exempt such authorities from the Competitive Bid Law, from Alabama's sunshine law, and from provisions of the Solid Wastes Disposal Act; and (5) that the October 19, 1990, agreement entered into by the Commission with BFI before BFI applied for local approval *Page 1372 
of the Bryan landfill site prevented the Commission from making the decision on local approval objectively and impartially and, thus, violated the plaintiffs' rights of due process in a fair hearing. Finally, the attorney general of Alabama has submitted amicus curiae briefs to this Court contending that the Authority and the Commission's agreement with BFI was an unconstitutional grant of an exclusive franchise because it did not comply with the Competitive Bid Law.
In response, the defendants contend that several of the plaintiffs' arguments were not presented to the trial court and, thus, were not properly preserved for appeal and cannot now be raised here as a basis for a holding that the trial court erred. In particular, the defendants argue that the plaintiffs have raised a "new" due process claim on appeal distinct from that which they argued to the trial court, and that the plaintiffs have also raised for the first time on appeal a contention that the exemption from the Competitive Bid Law found in the Solid Waste Disposal Authorities Act applies only to municipal solid waste disposal authorities and not to county solid waste disposal authorities or county commissions.
The function of an appeal is to obtain judicial review of the adverse rulings of a lower court; thus, it is a well-settled rule that an appellate court's review is limited to only those issues that were raised before the trial court. Andrews v.Merritt Oil Co., 612 So.2d 409 (Ala. 1992); Crest ConstructionCorp. v. Shelby County Bd. of Education, 612 So.2d 425 (Ala. 1992). Issues raised for the first time on appeal cannot be considered. Andrews, supra; Crest Construction, supra; Owens v.National Bank of Commerce, 608 So.2d 390 (Ala. 1992). However, "[t]he rule requiring adherence to the theory relied on below . . . does not mean the parties are limited in the appellate court to the same reasons or arguments advanced in the lower court upon the matter or question in issue." Home Indemnity Co.v. Reed Equipment Co., 381 So.2d 45, 50 (Ala. 1980).
The plaintiffs' complaint raised broad questions of due process, public policy, the application of the Competitive Bid Law, and the constitutionality of the Solid Waste Disposal Authorities Act. The trial court entered a judgment in favor of the defendants, based on "the pleadings and the briefs submitted by the parties; the exhibits filed by the parties in support of their respective motions for summary judgment . . .; [and] the oral testimony taken during the April 5, 1993, hearing on plaintiffs' Motion for a Preliminary Injunction." Thus, in this case we may properly consider those issues and arguments raised by the plaintiffs on appeal that were presented to the trial court in the various briefs and pleadings the parties submitted before that court entered the final judgment. See Home Indemnity, supra.
Accordingly, we conclude that the following issues are properly before this Court on appeal: (1) whether the October 19, 1990, agreement entered into by the Authority, the Commission, and BFI is subject to Alabama's Competitive Bid Law requirements and, thus, is void because it was not competitively bid; (2) whether the Commission and the Authority are exempt from the Competitive Bid Law by a provision of the Solid Waste Disposal Authorities Act and whether that latter Act is unconstitutional; and (3) whether the plaintiffs' due process rights were violated by a provision in the agreement between the Commission and BFI that, the plaintiffs contend, obligated the Commission to grant "local approval" for operation of the landfill at the Bryan site.
 III. Standard of Review
The defendants argue that because the trial court's judgment in their favor was based, in part, on oral testimony, the proper standard of review on this appeal is the ore tenus
standard. Under that standard, a trial court's findings of fact based on oral testimony and a judgment based on those findings are given a presumption of correctness. Marvin's, Inc. v.Robertson, 608 So.2d 391 (Ala. 1992). However, where the facts are not disputed the ore tenus standard does not apply. Justicev. Arab Lumber Supply, Inc., 533 So.2d 538 (Ala. 1988). Furthermore, that standard's presumption of correctness has no application to a trial court's conclusions on questions of law.Ex parte Board of Zoning Adjustment of the City of Mobile,636 So.2d 415 (Ala. 1994); Marvin's, supra. *Page 1373 
The facts in this case are not disputed — even the defendants, who contend the ore tenus rule is applicable, have characterized the facts as "undisputed." Further, although both sides lay claim to certain "facts," we find that many of these "facts" actually involve questions of law proper for the court to consider.[9] Thus, because the underlying facts are not disputed and this appeal focuses on the application of the law to those facts, there can be no presumption of correctness accorded to the trial court's ruling, and this Court must review that application of the law de novo. First National Bankof Mobile v. Duckworth, 502 So.2d 709 (Ala. 1987); Barrett v.Odom May DeBuys, 453 So.2d 729 (Ala. 1984).
 IV. Alabama's Competitive Bid Law
The plaintiffs and the attorney general, as amicus curiae, contend that the landfill agreement entered into by the Authority, the Commission, and BFI is void because, they say, it was a grant of an "exclusive franchise" by the Commission and was not entered into in accordance with the requirements of Alabama's Competitive Bid Law. The Competitive Bid Law, Ala. Code 1975, § 41-16-50(a), provides:
 "All expenditures of funds of whatever nature for labor, services or work, or for the purchase of materials, equipment, supplies or other personal property involving $ 5000.00 or more . . . made by or on behalf of any . . . county commission . . ., except as hereinafter provided, shall be made under contractual agreement entered into by free and open competitive bidding, on sealed bids, to the lowest responsible bidder. . . ."
(Emphasis added.) Further, § 41-16-51(d) states that "[c]ontracts entered into in violation of [the Competitive Bid Law] shall be void." This Court has ruled that in addition to the expenditure contracts specifically provided for in §41-16-50(a), "governmental grants of 'exclusive' franchises" also must substantially comply with the requirements of the Competitive Bid Law, or they are in violation of the Alabama Constitution.[10] Kennedy v. City of Prichard, 484 So.2d 432 (Ala. 1986).
The plaintiffs contend that this Court's opinion inBrown's Ferry Waste Disposal Center, Inc. v. Trent,611 So.2d 226 (Ala. 1992), created a common law rule requiring that all contracts entered into pursuant to the Solid Wastes Disposal Act be competitively bid. In addition, the plaintiffs and the amicus curiae contend that the Commission's agreement with BFI contains language granting to BFI an exclusive right or "franchise" to construct and operate the only solid waste landfill in Walker County, in violation of the Alabama Constitution and the Competitive Bid Law.
In response, the defendants argue that the plaintiffs' interpretation of Brown's Ferry is erroneous; they contend that that opinion did not create a common law rule of competitive bidding for all local governmental solid waste disposal contracts. The defendants also contend that the landfill agreement at issue is not subject to the bid law because it does not involve an expenditure by the commission, and, they contend, it did not grant an "exclusive franchise" to BFI. Finally, the defendants state that even if the landfill agreement was subject to competitive bidding under the Competitive Bid Law, the parties have been granted an exemption from that law by § 11-89A-18, part of the Solid Waste Disposal Authorities Act.
 A. The Brown's Ferry Opinion
The plaintiffs contend that this Court's opinion inBrown's Ferry Waste Disposal Center, Inc. v. Trent,611 So.2d 226 (Ala. 1992), created a new common law rule that *Page 1374 
all contracts entered into pursuant to the Solid Wastes Disposal Act must be competitively bid under Alabama's Competitive Bid Law. As their basis for this contention, the plaintiffs quote the following passage from that opinion: "We further hold that actions taken by local governments under the Solid Wastes Disposal Act, and contracts entered into pursuant to that Act, are subject to the provisions of the Competitive Bid Law." 611 So.2d at 230.
In response, the defendants argue that the plaintiffs' reliance on Brown's Ferry is misplaced because, they contend, that case was decided on its facts, which, the defendants argue, greatly differ from the facts of this case. The defendants argue that we struck down the landfill contract in that case as violating the Competitive Bid Law, for several reasons, including the fact that it involved a public expenditure of more than $ 5000 and the fact that it contained an express grant of an exclusive franchise; neither of these facts, they argue, is present in the agreement at issue in this case.
We conclude that the plaintiffs have taken the above-quoted passage from our Brown's Ferry opinion out of context. In that case, the contract at issue was clearly subject to the Competitive Bid Law because it involved the grant of an "exclusive franchise." In Brown's Ferry, we described the portion of the landfill agreement that violated the Competitive Bid Law by granting an exclusive franchise: "The landfill contract was fixed at three years and included a provision that during those three years the Commission would direct that [all] solid waste collected in Limestone County be placed in the landfill to be developed by Brown's Ferry." 611 So.2d at 227.
The contract granting an exclusive franchise had not been competitively bid, so the Brown's Ferry defendants argued to this Court on appeal that such a contract made pursuant to the Solid Wastes Disposal Act was exempt from the Competitive Bid Law.[11] In turn, we ruled that none of the exemptions applied and that the contract should have been competitively bid. Id. at 229. Thus, the passage from Brown's Ferry on which the plaintiffs rely was only this Court's response to the defendants' specific argument in that appeal.
In Brown's Ferry, we did not hold that all contracts entered into by local governments pursuant to the Solid Wastes Disposal Act must be competitively bid; rather, we explained that such contracts are subject to the provisions of the Competitive Bid Law — those provisions being that any contract entered into by a local government that involves a public expenditure of $ 5,000 or more or that grants an exclusive franchise, must be competitively bid. Ala. Code 1975, § 41-16-50(a); Kennedy, supra. In this case, the landfill agreement did not involve a public expenditure; however, we must determine if it granted an exclusive franchise to BFI.
 B. The Landfill Agreement
The portions of the landfill agreement that the plaintiffs have contested are section 5.2, "Permits," and section 5.5, "Other Facilities." Section 5.2 of the agreement states, in relevant part: "The Authority and County agree that they willcooperate and assist BFI in BFI's efforts to obtain such permits, licenses, and approvals as are necessary for BFI to construct and operate the BFI Sanitary Landfill." (Emphasis added.) More critically, section 5.5 of the agreement provides:
 "The Authority and County agree that throughout the term of this Agreement neither the Authority nor the County will, without the prior written consent of BFI, operate (except for the Walker County Landfill which will be closed contemporaneously with the commencement of operations at the BFI Sanitary Landfill) or develop any Solid Waste disposal facility (including, without limitation, any sanitary landfill, incinerator or similar facility) within the County and neither of them will enter into any agreement or other arrangement of any kind with any other *Page 1375 person or entity relating to the development, use or operation of any such Solid Waste disposal facility within the County. . . ."
(Emphasis added.) The trial court ruled that the landfill agreement did not grant an exclusive franchise to BFI.
However, the plaintiffs and the amicus curiae contend that by the above-quoted language, the Commission contractually agreed to grant "local approval" for BFI to construct a solid waste landfill in Walker County and to deny such approval to all other entities; thus, they argue, the Commission granted BFI an "exclusive franchise." They argue that section 5.5 clearly prohibits the Commission from granting "local approval" to any potential landfill operator other than BFI.
In response, the defendants claim that the agreement did not grant BFI an "exclusive franchise" because it does not expressly preclude the Commission from granting "local approval" of a landfill site to another landfill operator. They argue that exclusive franchises are not favored under the law and, therefore, that the grant of a franchise is presumed nonexclusive where there is no express provision to the contrary. In support of their position they cite Piedmont Power Light Co. v. Town of Graham, 253 U.S. 193, 194-95,40 S.Ct. 453, 454, 64 L.Ed. 855 (1920), where the Supreme Court stated: "Grants of rights and privileges by a State or municipality are strictly construed and whatever is not unequivocally granted iswithheld, — nothing passes by implication." (Emphasis added.) Further, as an example of a grant of an "exclusive franchise" that could have been made a part of the landfill agreement, butwas not, they quote: "During the term of this agreement or any extension thereof, County agrees not to approve any othersanitary landfill within County and not to enter into an agreement with another company, individual or governmental entity which will in any manner affect the contractor's landfill volume." (Emphasis added.) Thus, the defendants claim that because the language in their agreement does not contain an express provision prohibiting the Commission's grant of "local approval" to another operator, as does the example they offer, their agreement does not grant BFI an "exclusive franchise."
Finally, the defendants argue that the plaintiffs cannot now contend that BFI has an "exclusive franchise" because the plaintiffs failed to contest that part of the defendants' "Statement of Undisputed Facts" filed in the trial court that stated as a "fact" that the franchise was not exclusive. However, we note that the question whether a franchise is "exclusive" is one of law, not fact, and, thus, is properly before this Court for it to decide.
It is well settled that in the absence of an express provision, the grant of a franchise will not be construed as exclusive. Piedmont Power Light, supra. We note that in addition to being granted local approval for its landfill site, BFI was also granted the franchise of allowing the solid waste landfill it was to construct in Walker County to receive waste from eight Alabama counties in addition to Walker County and that in return BFI was to pay a $ 1 per ton host fee to the County and to provide the County free waste disposal; this amounted to a franchise to receive of out-of-county waste at its landfill. Although we conclude that section 5.5 of the landfill agreement does not expressly prohibit the Commission from granting local approval to another company's landfill site, we focus more generally on whether the landfill agreement granted to BFI an exclusive franchise to the right to receive out-of-county waste. In other words, does section 5.5 of' thelandfill agreement expressly prohibit the Commission orAuthority from granting a franchise to another waste disposalcompany similar to the one granted to BFI?
We conclude that it does.[12] The language used in section 5.5 of the agreement is very broad, and it expressly prohibits an agreement or arrangement such as the franchise granted to BFI. In fact, contrary to the position BFI now takes on appeal, at the August 3, 1993, hearing, BFI's attorney explained *Page 1376 
to the trial judge that the purpose of section 5.5 was to give BFI a monopoly with respect to operating a landfill in Walker County where no other landfill operator could make a contract with the County similar to BFI's.[13] Thus, we hold that the Commission and the Authority granted BFI an exclusive franchise. Accordingly, unless an exemption to the Competitive Bid Law is applicable, the landfill agreement at issue in this case is void because it was not competitively bid. See Brown'sFerry, supra.
 V. The Solid Waste Disposal Authorities Act
The defendants contend that even if the landfill agreement granted an exclusive franchise to BFI, it is exempted from the competitive bid requirement by a provision of the Solid Waste Disposal Authorities Act, Ala. Code 1975, § 11-89A-1 et seq. In response, the plaintiffs first argue that the Solid Waste Disposal Authorities Act is unconstitutional because, they argue, it exempts certain solid waste disposal authorities from provisions of the Alabama Sunshine Law and provisions of the Solid Wastes Disposal Act involving review by county health boards; this exemption, they argue, amounts to a deprivation of due process. However, because the plaintiffs cite no authority to support their position, we need not consider the argument.Nunley v. State, 628 So.2d 619 (Ala. 1993); Henderson v.Alabama A M University, 483 So.2d 392 (Ala. 1986).
The plaintiffs also argue that this Court was aware of the bid law exemption found in § 11-89A-18, part of the Solid Waste Disposal Authorities Act, when it decided Brown's Ferry and that its failure to apply the exemption to the contract in that case was a recognition that the exemption was unconstitutional. However, the focus of Brown's Ferry was a contract between the Limestone County Commission and a waste disposal company; the Limestone County Solid Waste Disposal Authority was not a party to the contract at issue in that case. Thus, our ruling inBrown's Ferry did not involve a review of the exemption from the Competitive Bid Law found in § 11-89A-18.
Finally, the plaintiffs argue that the exemption contained in § 11-89A-18 is applicable only to municipal solid waste disposal authorities and not to county commissions or county solid waste authorities such as the Commission or Authority involved here. Section 11-89A-18 provides:
 "Any [solid waste disposal] authority and all contracts made by it shall be exempt from the laws of the state of Alabama requiring competitive bids for any contract to be entered into by municipalities or public corporations authorized by them, including, but without limitation to, the provisions of article 3 of chapter 16 of title 41."
(Emphasis added.)
The first rule of statutory construction is that the intent of the legislature should be given effect. Ex parte McCall,596 So.2d 4 (Ala. 1992); Volkswagen of America, Inc. v. Dillard,579 So.2d 1301 (Ala. 1991). However, when possible, the intent of the legislature should be gathered from the language of the statute itself. Dillard, supra. Thus, where the language of the statute is plain, the court must give effect to the clear *Page 1377 
meaning of that language. Ex parte United Service Stations,Inc., 628 So.2d 501 (Ala. 1993); IMED Corp. v. Systems Eng'gAssociates Corp., 602 So.2d 344 (Ala. 1992).
Section 11-89A-18 is not ambiguous. It creates an exemption from the laws requiring that certain contracts of a municipality or of a public corporation authorized by a municipality, such as a municipal solid waste disposal authority, must be competitively bid. It does not create an exemption from the laws requiring that certain contracts of a county or of a county solid waste disposal authority must be competitively bid. Section 11-89A-17, which exempts all solid waste disposal authorities from usury laws, is useful for comparison. In § 11-89A-17, the legislature simply used the language, "Each authority shall be exempt from the laws of the state of Alabama governing usury or prescribing or limiting interest rates. . . ." The legislature could have used similarly broad language in § 11-89A-18 if it had intended all solid waste disposal authorities to be exempt from the Competitive Bid Law, but it did not use such language. Moreover, it is reasonable for the legislature to have made a distinction in the application of a Competitive Bid Law exemption between solid waste disposal authorities whose determining subdivision is a municipality and those whose determining subdivisions include a county.
Accordingly, the exemption contained in § 11-89A-18 does not apply to the contract made by the Walker County Solid Waste Disposal Authority and the Walker County Commission that granted BFI an exclusive franchise.
 VI. The Commission's Grant of Local Approval
The plaintiffs contend that the Commission's agreement to section 5.2 of the landfill contract, by which the Commission agreed to "cooperate and assist BFI in BFI's efforts to obtainsuch permits, licenses, and approvals as are necessary for BFIto construct and operate the BFI Sanitary Landfill," violated their rights of due process. The plaintiffs claim that through this agreement the Commission contractually bound itself to grant BFI's application for "local approval" of the Bryan landfill site, so that the Commission's approval, they argue, was a "foregone destination" of the procedural requirements. Specifically, the plaintiffs claim that the August 5, 1991, public hearing on BFI's application for "local approval" of the Bryan site did not fulfill the residents' due process rights to a fair and proper hearing, because, they contend, the commissioners, who were not present at the hearing, were not an "impartial tribunal."
We need not address the specifics of this claim. The Commission's grant of local governmental approval to the Bryan landfill site was based, in part, on the specific content of the contract at issue in this case. Because we have ruled that the contract is void, the Commission's grant of local approval based on that contract must also be held void. To hold otherwise would be to allow BFI to profit from making an unconstitutional contract. If this Court were to void the landfill agreement, but not the Commission's local approval of the Bryan site based on that unconstitutional agreement, BFI would have obtained the benefit of the only lawfully sited Subtitle D landfill in Walker County. Nothing would prevent BFI from then simply entering into a second contract with the Authority that did not grant it an exclusive franchise, and commence landfill operations. Thus, we hold that the Commission's grant of local approval to the Bryan landfill site, which was based on an unconstitutional and void contract, is also void. Accordingly, the trial court erred in denying the plaintiffs' motion for injunctive relief.
The plaintiffs originally sought to enjoin BFI's construction of its Walker County landfill, which is now completed. Now that we have ruled that the trial court erred in denying the plaintiffs' motion for a preliminary injunction, the question of whether to grant injunctive relief again becomes a consideration for the trial court. Whether to grant injunctive relief is generally left to the sound discretion of the trial court. Alabama Power Co. v. Drummond, 559 So.2d 158 (Ala. 1990); Pritchett v. Wade, 261 Ala. 156, 73 So.2d 533 (1954). A trial court has broad power to fashion such relief as it deems necessary to "do equity," and in doing so it *Page 1378 
may balance the degree of benefit to be experienced by the plaintiff if the requested relief is granted, against the degree of hardship to be experienced by the defendant if it is granted. Drummond, supra; Pritchett, supra; Alonzo v. Sanford,465 So.2d 1131 (Ala.Civ.App. 1984).
 VII. Conclusion
The judgment in favor of the defendants must be reversed. The agreement entered by the Commission, the Authority, and BFI granted an exclusive franchise to BFI without having been competitively bid, as required by Ala. Code 1975, § 41-16-51(a). See Kennedy, supra. Accordingly, because the contract was not competitively bid, and is not exempted from the competitive bid requirement by § 11-89A-18 of the Solid Waste Disposal Authorities Act, the contract is null and void. Brown's Ferry, supra. Because the Commission's grant of local approval was based on an unconstitutional and void contract, that grant of local approval is also void. Thus, we reverse the judgment and remand this cause to the trial court with instructions for that court to hold further proceedings consistent with this opinion and to fashion such relief as it deems necessary.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, HOUSTON, STEAGALL, KENNEDY, INGRAM and COOK, JJ., concur.
[1] Ala. Code 1975, § 22-27-1 et seq.
[2] 42 U.S.C. § 6941 et seq.
[3] Subtitle D of RCRA ordered the EPA to promulgate new regulations on solid waste management, resulting in the promulgation of 40 C.F.R. § 258.40, "Criteria for Municipal Solid Waste Landfills." These regulations mandate restrictions on landfill location, provide landfill operating criteria, provide design requirements such as a composite landfill liner (composed of a special synthetic membrane and compacted impermeable soil) and a leachate collection system, provide groundwater monitoring requirements, provide requirements for closure and post-closure care of the landfill site, and mandate post-closure financial assurance.
[4] The agreement states that the service area for the Bryan landfill includes Blount, Cullman, Fayette, Jefferson, Marion, Shelby, Tuscaloosa, Walker, and Winston Counties.
[5] The issue of whether the plaintiffs' due process rights were violated by the Commission's failure to provide proper notice and opportunity for public comment, as mandated by §22-27-48(a), before entering into a services agreement with BFI on October 19, 1990, was not raised on appeal. Thus, that issue is not before this Court.
[6] The "local approval" criteria set out in § 22-27-48(a) are: (1) the consistency of the proposed landfill site with the jurisdiction's solid waste management need; (2) the relationship of the site to planned or existing development and to transportation routes; (3) the relationship of the site to industries that generate large volumes of solid waste or areas projected for development by such industries; (4) the costs and availability of public services and other requirements needed to support the facility and "protect public health, safety and the environment"; (5) "[t]he impact of a proposed facility on public safety and provisions made to minimize the impact on public health and safety"; and (6) the social and economic impact of the facility on the local community, "including changes in property values, and . . . community perception."
[7] The commissioner for the district in which the landfill was to be located voted against granting "local approval."
[8] The original number of plaintiffs was 84. That number was reduced to 10 by stipulation, in order to facilitate discovery.
[9] For example, the plaintiffs claim as a "fact" that the Commission and the Authority's agreement with BFI was a grant of an "exclusive franchise," while the defendants claim as a "fact" that the agreement entered into between the Commission and BFI did not grant an "exclusive franchise" to BFI.
[10] Section 22 of the Alabama Constitution of 1901 states: "[N]o ex post facto law, nor any law, impairing the obligation of contracts or making any irrevocable or exclusive grants ofspecial privileges or immunities, shall be passed by the legislature; and every grant of franchise, privilege, or immunity shall forever remain subject to revocation, alteration, or amendment." (Emphasis added.)
[11] In Brown's Ferry, the defendants argued that the Competitive Bid Law did not apply to such contracts or that they were exempt from the Competitive Bid Law by Ala. Code 1975, §41-16-51(a)(3), (10), and (11). 611 So.2d at 229. This Court ruled that none of those exemptions to the Competitive Bid Law applied to that particular contract. Id.
[12] We decline to determine whether the landfill agreement granted BFI an exclusive franchise to receive waste generated solely within the borders of Walker County.
[13] At the August 3, 1993, hearing before the trial court on the plaintiff's post-judgment motion, the following colloquy occurred:
 "[PLAINTIFFS' ATTORNEY]: Your Honor, in response to what they said and with respect to the narrow issue they have argued here today, I still have not heard from anybody what that language purports to do in [section 5.5 of] the agreement. I still contend that that is indeed the granting of an exclusive franchise.
"[THE COURT]: That's interesting language.
"[BFI'S ATTORNEY]: Your Honor, if I might respond.
"[THE COURT]: Go ahead.
 "[BFI'S ATTORNEY]: If anything, that will grant BFI a monopoly with respect to entering into a contract with the County or Authority with respect to the operation of a landfill.
 "The language clearly says that it prevents the County Authority from entering into any agreement or other arrangement, referring to another type of agreement. It clearly does not say anything about preventing the County or Authority from granting local approval to any other applicant. All that would do, would keep the County from entering into a contract, for example, with Waste Away, to operate a solid waste landfill with respect to taking County waste or giving the County certain host fees for other type arrangements."