710 So.2d 406 (1998)
Regina R. TAYLOR
v.
John C. COX, Jr.
John C. COX, Jr.
v.
Regina R. TAYLOR.
1960578, 1960786.
Supreme Court of Alabama.
February 13, 1998.
*407 Collins Pettaway, Jr., of Chestnut, Sanders, Sanders & Pettaway, P.C., Selma, for appellant/cross appellee Taylor.
David A. Simon of Wills & Simon, Bay Minette, for appellee/cross appellant.
BUTTS, Justice.
These appeals stem from a contest of an election for the position of city council member for district four in Bay Minette. In the August 27, 1996, election, the incumbent, John C. Cox, Jr., was challenged by Regina R. Taylor. Cox was determined to have won the election; that result was contested by Taylor, who disputed the validity of several absentee ballots cast for Cox.
The trial court determined that Cox had received 109 valid nonabsentee votes and that Taylor had received 112 valid nonabsentee votes.[1] The trial court also determined that Cox had received four valid absentee votes,[2] for a total of 113 votes, one more than Taylor. The trial court ruled that although the four absentee voters had not themselves signed the application form for the absentee ballots, as Taylor argued was required by Ala.Code 1975, § 17-10-4, the absentee votes were valid and Cox had won the election. Taylor appealed.[3]
The decisive issue is strictly a question of law; thus, the de novo standard of review applies to that issue. We are asked to determine the meaning of § 17-10-4, Ala. Code 1975 (Cum.Supp.1997), specifically the portion thereof emphasized below:
"The [absentee ballot] application required in Section 17-10-3(a) shall be filed with the person designated to serve as the absentee election manager. The application shall be in a form prescribed and designed by the Secretary of State and shall be used throughout the state. Notwithstanding the foregoing, handwritten applications can also be accepted at any time prior to the five day deadline to receive absentee ballot applications as provided in Section 17-10-3(a). The application shall contain sufficient information to identify the applicant and shall include the applicant's name, residence address, or such other information necessary to verify that the applicant is a registered voter. Any applicant may receive assistance in filling out the application as he or she desires, but each application shall be manually signed by the applicant and, if he or she signs by mark, the name of the witness to his or her signature shall be signed thereon. The application may be handed by the applicant to the absentee election manager or forwarded to him or her by United States mail. An application for an emergency absentee ballot pursuant to Section 17-10-12 may be forwarded to the absentee election manager by the applicant or his or her designee. Application forms which are printed and made available to any applicant by the absentee election manager shall have printed thereon all penalties provided for any violation of this chapter."
(As amended by Act No. 96-885, § 2, Ala. Acts 1996, effective August 2, 1996.) (Emphasis added.)
The signatures of the voters on the four absentee ballots at issue were properly notarized or witnessed, as required by § 17-10-17. Taylor challenges the absentee ballots strictly because the voters did not themselves sign the application forms for the absentee ballots, but had a designated agent sign the application form for them. Thus, we must determine whether § 17-10-4 requires that in all instances absentee ballot application forms must be signed by the voters themselves. In other words, is an otherwise valid absentee vote made invalid by the fact *408 that the absentee voter did not himself or herself sign the application form?
In interpreting § 17-10-4, we have kept in mind the first rule of statutory construction: to give effect to the intent of the legislature. Hines v. Riverside Chevrolet-Olds, Inc., 655 So.2d 909 (Ala.1994); Beavers v. County of Walker, 645 So.2d 1365 (Ala. 1994). If possible, a court should gather the intent of the legislature from the plain language of the statute. BP Exploration & Oil, Inc. v. Hopkins, 678 So.2d 1052 (Ala.1996); Beavers, supra.
After reviewing the text of § 17-10-4, we find its language and meaning clear. The wording "shall be manually signed by the applicant" clearly means that the applicant for an absentee ballot must himself or herself sign the application for the absentee ballot form. The record does not indicate that any voter whose ballot was challenged by Taylor because he or she did not personally sign the absentee ballot application was physically unable to sign the application.[4] Although § 17-10-4 makes no exception or accommodation for a person physically incapable of making his or her own signature, such as a quadriplegic, or for one who is otherwise similarly infirm, it is not this Court's place to question the wisdom of the legislature. However, because it appears that § 17-10-4 has the effect of depriving certain persons who are incapable of manually signing an absentee ballot application form of their right to vote, we suggest that the legislature reconsider the wording of this statute.
Thus, the trial court erred in holding that the absentee ballots were valid even though the applications for the ballots had not been manually signed by the applicants. We reverse the judgment of the trial court, which held that Cox had received four valid absentee ballots, and we remand this cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX and HOUSTON, JJ., concur.
SEE, J., concurs specially.
COOK, J., dissents.
SEE, Justice (concurring specially).
I concur with the majority opinion, and I write specially to address the importance of upholding the Legislature's procedural protections of the voting process.
This simple election case concerns a principle at the very heart of the democratic processthe integrity of elections. Voters elect representatives to perform the legislative function of setting public policy through the enactment of statutes. See Ala. Const.1901, § 46 (providing for the election of legislators); § 42 (investing the Legislature with the legislative power). It is the province of the courts to interpret those statutes to effect the intent of the people's elected representatives. See Ala. Const.1901, § 42 (investing the Supreme Court and other courts with the judicial power); id. at amend. 328, § 6.01(a) (investing the Unified Judicial System with the judicial power). Nowhere is this fundamental principle of more obvious consequence than in the interpretation of statutes governing the election of those who represent the people.
Section 17-10-4, Ala.Code 1975, provides in pertinent part: "Any applicant may receive assistance in filling out the application as he or she desires, but each application shall be manually signed by the applicant...." (Emphasis added.) The simple words "shall be manually signed by the applicant" plainly mean that the applicant himself must sign the application for the absentee ballot. The applications in this case were not manually signed by the applicants.[5] Therefore, *409 the applications are illegal and the ballots obtained thereby should not be counted.[6]
Justice Cook, in his dissent, 710 So.2d at 410, emphasizes that "it is the ultimate act... of casting a fraudulent ballot" that is the evil. He concludes that the plain meaning of § 17-10-4, which regulates the intermediate step of obtaining the absentee ballot by signing an application, may therefore be ignored. Id. Yet, such an intermediate step can facilitate the ultimate fraud. For example, in Williams v. Lide, 628 So.2d 531, 537 (Ala. 1993), this Court described a use of applications to fraudulently obtain and cast absentee ballots:
"[Lide] contest[ed] the legality of two absentee votes. Election officials counted those two votes for Williams; however, at trial, both of the voters testified that a man came to their home prior to the November election and told them that he would assist them in voting by absentee ballot. The voters testified that they gave the man their names, addresses, and Social Security numbers. They further testified that the man told them that they would receive absentee ballots in the mail; however, they said, they never received or cast any absentee ballots and never told the man for whom they intended to vote. When shown affidavits allegedly signed by them, they testified that the signatures thereon were not theirs."[7]
The Legislature is not restricted to regulating only the final step in an illegal scheme, but may regulate intermediate steps, steps seemingly innocent in themselves, to combat a danger to the citizenry.[8]
The danger of allowing absentee ballots to be procured by political "agents" for subsequent fraudulent casting can be largely eliminated by requiring that each absentee voter manually sign the application for his individual ballot, thus limiting the use of applications, and ballots, to one per voter. The Legislature, by enacting § 17-10-4, made the policy choice to limit the use of applications to one per voter. Today, this Court respects the Legislature's policy choice, and I concur.
COOK, Justice (dissenting).
It is undisputed that the four absentee ballots actually cast for the appellee John Cox, Jr., and counted by the trial court, were either witnessed by two persons or were notarized. See Ala.Code 1975, § 17-10-7. The majority's analysis of Ala.Code 1975, § 17-10-4, violates well-established principles of statutory construction. Therefore, I respectfully dissent.
Section 17-10-4 provides in pertinent part:
"The application required in Section 17-10-3(a) shall be filed with the person designated to serve as the absentee election manager. The application shall be in a form prescribed and designed by the Secretary of State and shall be used throughout the state. Notwithstanding the foregoing, handwritten applications can also be accepted at any time prior to the five *410 day deadline to receive absentee ballot applications as provided in Section 17-10-3(a). The application shall contain sufficient information to identify the applicant and shall include the applicant's name, residence address, or such other information necessary to verify that the applicant is a registered voter. Any applicant may receive assistance in filling out the application as he or she desires, but each application shall be manually signed by the applicant and, if he or she signs by mark, the name of the witness to his or her signature shall be signed thereon."
(Emphasis added.)
The majority nullifies every ballot obtained by an application bearing the signature of a designee. Nowhere has the legislature suggested such a result. Significantly, § 17-10-7 expressly and specifically nullifies only ballots that are cast without two witnesses or notarization. Specifically, by Act No. 96-885, 1996 Ala. Acts, p. 1699, the legislature substantially strengthened the requirements of § 17-10-7 by adding the following language to the affidavit form:
"IF YOUR AFFIDAVIT IS NOT SIGNED (OR MARKED), OR IF YOUR AFFIDAVIT IS NOT WITNESSED BY TWO WITNESSES 18 YEARS OF AGE OR OLDER OR A NOTARY PUBLIC OR OTHER OFFICER AUTHORIZED TO ACKNOWLEDGE OATHS, PRIOR TO BEING DELIVERED OR MAILED TO THE ABSENTEE ELECTION MANAGER, YOUR BALLOT WILL NOT BE COUNTED."

(Emphasis added.) In that same act, the legislature also made certain changes to Ala. Code 1975, § 17-10-4, the section involved in this case. None of those changes, however, were directed at the practice of securing an absentee ballot application by the authorized signature of one other than the voter. More specifically, the legislature did not change a word of the language at issue in this case, namely: "Any applicant may receive assistance in filling out the application as he or she desires, but each application shall be manually signed by the applicant...." Had the legislature discerned any such problems with § 17-10-4 as are posited by the majority of this Court, it had before it, when it adopted Act No. 96-885, a grand opportunity at that time to address them. It did not do so.
Section 17-10-7 does not provide that ballots obtained over the signature of a designee are to be rejected. Clearly, had the legislature intended that result, it knew how to say so. It is not the function of the judiciary to rewrite statutes.
Moreover, § 17-10-17(a) provides:
"(a) Any person who willfully changes an absentee voter's ballot to the extent that it does not reflect the voter's true ballot, any person who willfully votes more than once by absentee in the same election, any person who willfully votes for another voter or falsifies absentee ballot applications or verification documents so as to vote absentee, or any person who solicits, encourages, urges, or otherwise promotes illegal absentee voting, upon conviction, shall be punished by imprisonment in the penitentiary for not less than one nor more than two years, or by a fine of not less than $500.00 nor more than $2,000.00, or by being both fined and imprisoned. Any person who willfully aids any person unlawfully to vote an absentee ballot, any person who knowingly and unlawfully votes an absentee ballot, and any voter who votes both an absentee and a regular ballot at any election shall be similarly punished."
(Emphasis added.) As the emphasized provisions illustrate, it is the ultimate act, that is, the act of actually casting a fraudulent ballot, that is the object of the restrictions in Chapter 10 of Title 17 and of § 17-10-4 in particular. No illegality can materialize until, and unless, the ballots are actually cast in a fraudulent manner. Certainly, there have been no allegations that the ballots at issue in this case were fraudulently cast. For these reasons, I respectfully dissent.
NOTES
[1] Cox received 111 machine votes and Taylor received 113 machine votes. The trial court determined that certain of the votes were illegal and could not be counted, thus reducing the nonabsentee vote count to 109 for Cox and 112 for Taylor.
[2] The trial court found that one absentee vote was invalid because the voter's signature on the absentee ballot had not been notarized or witnessed, as required by Ala.Code 1975, § 17-10-7.
[3] Taylor's appeal and Cox's cross appeal raise several issues, but we consider the decisive issue to be the validity of four absentee ballots. We need not discuss the other issues the parties have raised.
[4] The voters whose absentee ballots are challenged because they did not themselves sign the absentee ballot application are a 99-year-old man; his 90-year-old wife, who is bedridden; a long-distance truck driver; and a full-time college student.
[5] In this case, the applicants were capable of signing the applications, as demonstrated by their signing of the affidavits attached to the ballots. Thus, I need not address the issue of physical incapacity to sign an application.
[6] The 1996 amendment of § 17-10-7, Act No. 96-885, 1996 Ala. Acts, p. 1699, reinforced that section's two-witnesses-or-notarization requirement without adding similar reinforcing language to § 17-10-4 regarding applications for absentee ballots. Justice Cook interprets this amendment to mean that, notwithstanding the plain language of § 17-10-4, the Legislature intended for applications not to be manually signed by the applicant. This interpretation ignores the history that gave rise to the amendment of § 17-10-7. See Roe v. Mobile County Appt. Bd., 676 So.2d 1206, 1226 (Ala.1995) (holding that absentee ballots could be counted even if they failed to comply with the two-witnesses-or-notarization requirement of § 17-10-7). In my view, far from approving this Court's holding in Roe, Act No. 96-885 was an express disapproval of judicial departures from the plain meaning of election statutes.
[7] The fraudulent use of absentee ballot applications has also been noted by other courts. See, e.g., Ingber v. Enzor, 664 F.Supp. 814 (S.D.N.Y. 1987) (noting that a municipal official had obtained his office through the use of false applications for absentee ballots), aff'd, 841 F.2d 450 (2d Cir.1988).
[8] For example, the Legislature may regulate various aspects of driving automobiles in addition to imposing severe punishment for criminally negligent homicide caused by drunk driving. See, e.g., Ala.Code 1975, § 32-6-1 (regulating the driving of automobiles by requiring drivers to obtain licenses); § 32-5A-191 (regulating the driving of automobiles by imposing escalating punishments for driving while under the influence of alcohol); § 13A-6-4(c) (regulating the driving of automobiles by imposing class C felony punishment for killing another person with a vehicle while under the influence of alcohol).