THOMPSON, Judge.
Sheila Hamilton, William Whetstone, and Calvin Edwards (hereinafter collectively referred to as the “plaintiffs”) filed an action against the Coosa County Board of Education; the superintendent of education, and the members of the Coosa County Board of Education (hereinafter collectively referred to as the “Board”). In their complaint, the plaintiffs, all school-bus drivers, alleged a denial of equal protection and a breach of contract. The plaintiffs sought backpay.
The defendants moved for a summary judgment. The trial court denied their motion. In lieu of conducting a bench trial, the court allowed the parties to submit the case on briefs. The trial court entered a judgment in favor of the plaintiffs, finding that the Board had changed *833 its policy regarding the rate of pay for school-bus drivers. The court awarded the plaintiffs backpay. The defendants appealed.
The trial court did not hear ore tenus evidence, and it was therefore not called upon to determine the issue of the credibility of the witnesses. Thus, because this court reviews the same evidence, in the same form, as was presented to the trial court, the trial court’s judgment applying the law to the facts carries no presumption of correctness. Beavers v. County of Walker, 645 So.2d 1365 (Ala.1994). Because this appeal concerns only the application of the law to the facts, this court reviews the trial court’s judgment de novo. Ex parte Graham, 702 So.2d 1215 (Ala.1997).
The record indicates that before 1977, the Board operated three high schools and two junior high schools. Each bus driver drove a route carrying students from home to school in the morning and from school to home in the afternoon. Some of the drivers made more stops than others, and some of the drivers delivered students to more than one school. Before 1977, all bus drivers were paid the same salary; the parties refer to this one salary as “one contract.”
In 1977, the Board opened a vocational school and an advanced-placement center. The student body at the vocational school was made up solely of students attending the three Coosa County high schools. In order to shuttle the vocational students between those high schools and the vocational school, the Board hired five of the bus drivers who also drove regular morning and afternoon routes to transport students to and from the vocational school during the day. (For the remainder of this opinion, those school-bus drivers are referred to as “vocational-shuttle drivers”). The Board paid an extra “half contract” salary to the vocational-shuttle drivers who delivered students to the vocational school during the day in addition to driving their regular routes. Bus drivers who drove students from home to school and back received pay by the “one-contract” rate. The vocational-shuttle drivers received an additional amount equal to half the “one-contract” rate, to compensate them for their additional duties.
In 1988, the Board consolidated the three high schools into one high school, Central High School. The Board created new bus routes after the three high schools were consolidated. Some of the new routes required that some of the bus drivers stop at the elementary school, the vocational school, and the new high school. Other routes required only that drivers transport students to and from one of the schools. Larry Hardman, the superintendent of education, testified that the new routes were designed to ensure that all bus drivers spent a comparable amount of time on their routes.
The new school is located approximately one-half mile from the vocational school. After the three area high schools were consolidated in 1988, there was no longer a need for more than one vocational-shuttle driver to shuttle students between the vocational school and the new high school. Therefore, the remaining four vocational-shuttle drivers were no longer needed during the day, but they continued to drive their morning and afternoon bus routes.
Hardman met with representatives of the Alabama Education Association (“AEA”), to discuss the possibility of eliminating the extra half-contract salary for the five former vocational-shuttle drivers. However, the AEA representatives told Hardman that to make that change the Board would have to conduct a “fair-dismissal” hearing for each of the vocational-shuttle drivers affected by the change. Hardman testified that such hearings could be very expensive and that he therefore decided to continue paying the former vocational-shuttle drivers a base salary pursuant to the “contract and a half.” All drivers who had not driven a mid-day shuttle to the vocational school continued *834 to receive a “one-contract” salary. All bus drivers who were hired to replace a retired vocational-shuttle driver were paid a salary at the “one-contract” rate.
The bus driver who was selected to shuttle students from the new high school to the vocational school during the day is paid at a rate twice the “one-contract” rate — i.e., she is paid at a “two-contract” rate. This is because she was a vocational-shuttle driver before 1988 (thus her base salary was at a rate of one and a half contracts) and the Board pays her an additional amount at the half-contract rate for shuttling the students to and from the vocational school.
The plaintiff Whetstone was hired as a school-bus driver in 1979. Both before and after 1988, Whetstone drove only a morning and an afternoon bus route. He never drove a shuttle during the school day to the vocational school. Since he was hired in 1979, he has been paid at the “one-contract” rate.
The Board hired the plaintiff Sheila Hamilton as a bus driver for the 1994-95 school year. She replaced a vocational-shuttle driver who had been paid at the “contract-and-a-half’ rate since 1988. Wfiien she was hired, Hamilton signed an agreement stating that she understood that her predecessor had earned one and a half times her salary and that some fellow bus drivers also earned that amount because of their prior service as vocational-shuttle drivers.
The Board hired the plaintiff Calvin Edwards as a bus driver in 1995. He drives students to and from school in the mornings and afternoons. He signed an agreement similar to that signed by Hamilton, an agreement indicating that he knew of the discrepancy between his pay and that received by a few of the Board’s other 28 bus drivers.
The plaintiffs alleged that it was the Board’s policy to pay a salary to bus drivers based on “one-and-a-half ’ contracts if the bus drivers, at any point during the day, drove students to the vocational school. The plaintiffs’ morning route required them to drop off students at the elementary school, pick up students from other buses at the elementary school, and transport those students to the high school or the vocational school. They make the same stops in reverse order in the afternoon. The plaintiffs alleged that they are performing duties that entitle them to a salary under a “contract-and-a-half’ because they had “shuttled students between schools.”
The Board argued that because none of the plaintiffs shuttle students between the high school and the vocational school between classes during the school day, the plaintiffs are not vocational-shuttle drivers and are not entitled to be paid at the “contract-and-a-half’ rate.
The plaintiffs argued that because other bus drivers received higher pay than they did for performing the same duties, the Board had violated their rights to equal protection of the laws. The plaintiffs also sought backpay, alleging that the Board had breached their employment contracts by changing its policy regarding their salaries, without complying with § 16-8-10, Ala.Code 1975, which was later replaced by § 16-1-30, Ala.Code 1975, on July 1, 1995.
“The local board of education shall, upon the written recommendation of the county superintendent of education, determine and establish a written educational policy for the county and shall prescribe rules and regulations for the conduct and management of the schools. Before adopting written policies the board shall directly, or indirectly through the superintendent, consult with the professional organization representing the majority of the certified employees and in addition shall also consult with professional assistants, principals, teachers and interested citizens. The county board must establish such policies and adopt such rules and regulations and file them with the state *835 superintendent of education. Such •written policies, rules and regulations, so established, adopted or promulgated shall be made available to all teachers employed by the county board. Any amendments to such policies, rules and regulations shall be developed in the same manner, filed with the state superintendent and furnished to the teachers employed by the local board within 20 days after adoption thereof.”
§ 16-8-10, Ala.Code 1975 (now replaced by § 16-l-30(b), Ala.Code 1975).
The trial court entered a judgment holding that the Board’s decision not to pay the plaintiffs at the “contract-and-a-half’ rate was a change in its policy and that that change required, pursuant to § 16-8-10, the recommendation of the superintendent, a note by the Board, and notification of the bus drivers affected. The Board appealed.
The Board argues that the trial court erred in determining that it had changed its policy by not paying school bus drivers at the “contract-and-a-half’ rate if the drivers’ morning and afternoon routes required stops at the vocational school. The Board argues that the pay differential between the plaintiffs and the former vocational-shuttle drivers was not a result of a change in the Board’s policy. We agree.
We conclude that no evidence in the record supports a conclusion that in paying the plaintiffs at the “one contract” rate the Board changed a prior policy. Before 1977, the Coosa County school-bus drivers were paid to transport students to school in the morning and from school in the afternoon. Those drivers were all paid pursuant to one school-bus-driver contract. No evidence in the record indicates whether, before 1977, any or all of the school-bus drivers made stops at more than one school.
In 1977, when the vocational school opened, the Board recognized the need to hire school-bus drivers to shuttle students to and from the vocational school between classes during the school day. The Board adopted a policy of paying the vocational-shuttle drivers an extra “half-contract” to compensate them for their additional duties.
It is undisputed that the Board did not formally vote on a proposal or make the decision not to pay a “contract-and-a-half’ to drivers other than the former vocational-shuttle drivers. Hardman testified that in 1988, after the AEA told him that the Board would have to conduct fair-dismissal hearings in order to reduce the salaries of the vocational-shuttle drivers, Hardman decided to leave the salaries of the former vocational-shuttle drivers at the one-and-a-half-contract rate. Hardman testified that, as each of those drivers quit or retired, he hired a new bus driver at the “one contract” rate. Hardman testified that the bus routes in the school system were designed to ensure that all school-bus drivers spent approximately the same amount of time driving their routes.
The plaintiffs, in support of their argument, also point out that in 1988-89, the Board paid two bus drivers, in addition to the vocational-shuttle drivers, at the “contract-and-a-half’ rate, to drive students between an elementary school and the new high school. However, although the minutes of the Board meeting indicate that those two drivers were paid a contract- and-a-half, they do not specify whether the drivers made only morning and afternoon routes or whether those drivers shuttled students between the schools during the school day. Also, in those minutes, six other bus drivers are listed as making stops between an elementary school and the high school or between other schools. The Board minutes reflect that although those six school-bus drivers made stops at more than one school, each of them was paid “one contract” and did not receive one-and-one-half times the “one-contract” salary for stopping at the additional schools.
The undisputed .evidence in the record indicates that the Board decided to pay the *836 vocational-shuttle drivers an extra half-contract because of the extra time during the day that those bus drivers spent working for the Board. The record contains no evidence indicating that the Board intended to pay an extra half-contract to school bus drivers who drove to the vocational school during their morning or afternoon bus routes.
We conclude that the Board did not change its policy by refusing to pay the plaintiffs an extra half-contract because they stopped at the vocational school during their morning and afternoon bus routes. Therefore, the Board did not violate the provisions of § 16-8-10, Ala.Code 1975.
The Board also argues that the discrepancy in pay received by the former vocational-shuttle drivers and the pay received by the plaintiffs does not amount to a violation of the plaintiffs’ rights to equal protection.
“The basic tenet of the equal protection clause is that all persons similarly situated must be treated equally. McClendon v. Shelby County, 484 So.2d 459 (Ala.Civ.App.1985). It does not, however, require that a policy necessarily apply equally to all persons or require that things different in fact be treated in law as though they were the same. McClendon.
“If reasonable minds may differ as to the wisdom of an administrative board’s action, or if there appears some reasonable basis for the distinction made by the board, such action is conclusive, and the court will not substitute its judgment for that of the board. Hughes v. Jefferson County Board of Education, 870 So.2d 1084 (Ala.Civ.App.1979).
“This court will not set aside the judgment of the trial court unless the judgment is plainly and palpably contrary to the evidence. Hughes."
Harris v. Marion County Bd. of Educ., 644 So.2d 29, 30-31 (Ala.Civ.App.1994).
In Harris, supra, the school board established a salary schedule providing that all skilled employees, including lunchroom workers, would earn $6.50 per hour. The school board decided to “grandfather” those lunchroom employees who were earning more than $6.50 per hour when the new schedule was implemented. A lunchroom employee who earned less than the highest-earning “grandfathered” employee sued the school board, claiming a denial of equal protection. This court held that the school board had a legitimate interest in maintaining the status quo and that there was a rational basis for the discrepancies in the lunchroom employees’ salaries. Harris, supra.
In this case, the plaintiffs made no argument that their claim involved a fundamental right or a suspect classification. Therefore, the issue is whether the pay discrepancy is rationally related to a legitimate interest of the Board. Harris, supra.
The Board had a legitimate interest in avoiding the costs of litigation that would arise if it was forced to conduct five fair-dismissal hearings regarding the former vocational-shuttle drivers. Hardman’s decision to “grandfather” the salaries of the five former vocational-shuttle drivers was rationally related to that purpose. See Harris, supra.
We must hold, under the facts of this case, that the trial court erred in entering a judgment in favor of the plaintiffs and in awarding them backpay.
REVERSED AND REMANDED.
ROBERTSON, P.J., and MONROE and CRAWLEY, JJ., concur.
YATES, J., concurs specially.