The Limestone County Commission ("Commission") entered into a contract with Brown's Ferry Waste Disposal Center, Inc. ("Brown's Ferry"), to develop and operate a sanitary landfill in Limestone County for the disposal of solid waste. The Commission did not hold public hearings before entering into that contract, and it did not comply with the Competitive Bid Law. The trial court declared the landfill contract "null and void." The Commission and Brown's Ferry appeal. We affirm.
In 1987, the chairman of the Commission contracted a representative of Waste Away about the possibility of Waste Away's developing and operating a landfill in Limestone County. "Waste Away" is a term referring to a group of companies that includes Brown's Ferry. In August 1988, the Commission began considering the proposal of Brown's Ferry for the landfill contract.
On September 1, 1988, Waste Away delivered to the Commission a draft of a proposed contract for the operation of the landfill. On September 6, 1988, the Commission held a meeting; a representative of Browning-Ferris Industries ("BFI"), presented a proposal by BFI for a private landfill. On October 17, 1988, the Commission voted to accept the landfill search committee's option of a private operation of a landfill; Waste Away's proposal was selected.
On November 10, 1988, the Commission approved the location of a 194-acre landfill site, called the "Young property," and entered into a contract with Brown's Ferry for the construction, operation, and maintenance of the solid waste disposal facility. The contract stated that it was formulated pursuant to § 22-27-5, Alabama Code 1975, which authorizes county commissions to enter into contracts for the disposal of solid wastes, and § 41-16-51(a)(3), (10), (11), Code 1975, which list certain contracts for which competitive bidding is not required. The landfill contract was fixed at three years and included a provision that during those three years the Commission would direct that solid waste collected in Limestone County be placed in the landfill to be developed by Brown's Ferry.
The Commission and Brown's Ferry executed the landfill contract on November 21, 1988. When it was discovered that the articles of incorporation of Brown's Ferry had not been filed for record, the landfill contract was re-executed and filed on November 29, 1988, by both the Commission and Brown's Ferry.
On January 9, 1989, the Commission, again without notice to the citizens of Limestone County, passed a resolution authorizing the creation of the Solid Waste Disposal Authority ("Authority"). On January 20, 1989, the Commission approved an additional landfill site, called the "McCormack property." On February 27, 1989, the Authority passed a resolution authorizing the issuance of revenue bonds of between $5 and $10 million, and, for the purpose of enabling the Authority to purchase the Young property and the McCormack property, to construct and equip a solid waste landfill site and facility, and for the Authority to lease it to Brown's Ferry at a rental sufficient to retire the bond indebtedness.
Neither the citizens of Limestone County nor the Commissioners were ever informed that the solid waste landfill facility would ultimately be owned by the Authority. To the contrary, the Commissioners and the citizens, too, to the extent that the citizens were informed at all about the facility, were told that the landfill facility would be owned by Waste Away.
On March 10, 1989, Van G. Trent, a citizen and taxpayer of Limestone County, sued Brown's Ferry, Durward W. Jackson III (president of Brown's Ferry), Waste Away, Limestone County, and the Commission members. Trent owns land a few miles from the proposed Brown's Ferry landfill site and is involved in the development of a residential subdivision on that land.
All defendants filed motions for summary judgment. The trial court denied the *Page 228 
motions, and the case was tried ore tenus. The court declared the contracts for the construction and operation of the solid waste landfill in Limestone County "null and void." This appeal followed.
The first issue we must decide is whether the landfill contract is void for lack of notice to, and an opportunity to be heard by, the citizens of Limestone County. The Solid Wastes Disposal Act, codified at § 22-27-1 et seq., establishes a scheme by which local governments may deal with solid wastes. It permits those local governments, with the approval of health and environmental agencies, to approve sites for the establishment of solid waste landfills and to make available facilities for the public collection and disposal of solid wastes. No corporation or individual may establish a solid waste facility without the approval of the local governing body in whose jurisdiction the facility is located. Must the local governing body provide its citizens notice and a chance to be heard before approving a site and before awarding a contract to a private party for the collection and disposal of solid wastes? In Ex parte Lauderdale County, 565 So.2d 623
(Ala. 1990), this Court held that, unless notice was given to the citizens and a hearing was afforded to the affected citizenry, an award of a contract to a private corporation by a county under the provisions of the Solid Wastes Disposal Act violated the due process provisions of the Constitution of the United States and the Constitution of the State of Alabama. We reaffirm the principle that procedural due process, protected by the Constitutions of the United States and this State, requires notice and an opportunity to be heard when one's life, liberty, or property interests are about to be affected by governmental action.
It cannot be argued that the interests of the citizens of Limestone County are unaffected by the contract that is the subject of this litigation. The citizens have a vital interest in the disposal of solid wastes within the county, in the site approved for their disposal, and in the contract awarding the right to operate the facility made between the County and a private corporation. Because the Commission failed to supply any notice to the public and totally failed to establish any opportunity for the citizens to be heard, the contract is, as the trial court held, null and void.
Section 13A-14-2, Code of Alabama 1975, requires all meetings of county commissions to be open to the public:
 "(a) No executive or secret session shall be held by any of the following named boards, commissions or courts of Alabama, namely: Alabama public service commission; school commissions of Alabama; board of adjustment; state or county tax commissions; any county commission, any city commission or municipal council; or any other body, board or commission in the state charged with the duty of disbursing any funds belonging to the state, county or municipality, or board, body or commission to which is delegated any legislative or judicial function; except, that executive or secret sessions may be held by any of the above named boards or commissions when the character or good name of a woman or man is involved."
This Court has stated:
 "The public meeting requirement is for the benefit of the public to ensure that it has the opportunity to become informed as to the affairs of its governmental bodies. It is intended that the whole deliberative process be open to public scrutiny, rather than that there be the mere formal announcement of decisions already made in private."
Miglionico v. Birmingham News Co., 378 So.2d 677, 680
(Ala. 1979).
The Commission's regularly scheduled monthly public meeting of November 7, 1988, was adjourned to November 10, 1988, for the opening of sealed bids for the sale of three heaters, one wood stove, and one dragline. The landfill contract was not on the agenda, and there was no mention or notice that it would be considered on November 10. During the November 10 meeting, which lasted 28 minutes, the Commission also approved the landfill site and executed the landfill contract at issue.
The contract is also void for failure to comply with the Competitive Bid Law. The defendants contend that the landfill contract is not governed by the bid law. They *Page 229 
argue that the bid law is inapplicable to a contract made pursuant to the Solid Wastes Disposal Act, or that such a contract is specifically exempted from the bid provisions of the law by express provisions of that law. Alternatively, they argue that if this contract is governed by the bid law, then it was exposed to a competitive process during which a competitor, BFI, submitted a proposal to the Commission, and that the bid law was substantially complied with.
The Competitive Bid Law, in pertinent part, reads:
 "(a) All expenditures of funds of whatever nature for labor, services or work, or for the purchase of materials [or] equipment . . . involving $5000.00 or more, . . . made by or on behalf of any county commission and . . . the governing boards of instrumentalities of counties . . . except as hereinafter provided, shall be made under contractual agreement entered into by free and open competitive bidding, on sealed bids, to the lowest responsible bidder. . . ."
Code of Alabama 1975, § 41-16-50.
 "(a) The award of each contract for which bids have been submitted to a municipality shall be made to the lowest responsible bidder who may comply with such reasonable regulations as may be prescribed before the bids are called for."
Code of Alabama 1975, § 11-47-6(a).
 "The purpose of statutory or charter provisions requiring municipal corporations to let contracts on competitive bidding after notice is to secure economy and protect the citizens and taxpayers of the municipality from fraudulent favoritism in letting contracts."
Urban Sanitation Corp. v. City of Pell City, Alabama,662 F. Supp. 1041, 1043 (N.D.Ala. 1986), quoting from Carson CadillacCorp. v. City of Birmingham, 232 Ala. 312, 167 So. 794 (1936).
The only contracts that are not subject to the bid law are those specifically exempted by § 41-16-51, Code of Alabama 1975. The contract states that it is entered into pursuant to three of the exemptions listed in the Competitive Bid Law:
 "(3) Contracts for the securing of services of attorneys, physicians, architects, teachers, superintendents of construction, artists, appraisers, engineers, consultants, certified public accountants, public accountants or other individuals possessing a high degree of professional skill where the personality of the individual plays a decisive part;
". . . .
 "(10) Existing contracts up for renewal for sanitation or solid waste collection and disposal between municipalities and/or counties, and those providing the service; [and]
 "(11) Contractual services and purchases of commodities for which there is only one vendor or supplier and contractual services and purchases of personal property which by their very nature are impossible of award by competitive bidding."
Code of Alabama 1975, § 41-16-51(a)(3), (10), and (11). The landfill contract does not fall within any of these exemptions. It is not a contract for professional services exempted by (3); it is not a renewal of an existing contract exempted by (10); and it is not a contract for which there is only one vendor; nor is it by its very nature impossible of award by competitive bidding.
Because the Competitive Bid Law was disregarded, the contract violates the constitution and is void.
 "When contracts of this nature are agreed upon without proper competitive bidding, the Constitution is violated:
 " 'The monopoly which is obnoxious to the law, or the special exclusive privilege under the ban of the Constitution, is a privilege farmed out to the highest bidder, or conferred because of favoritism to the donee, and not one awarded to the lowest bidder, and for the convenience and benefit of the public.' Dickinson v. Cunningham, 140 Ala. 527 at 533-534, 37 So. 345 at 349 (1903)."
Kennedy v. City of Prichard, 484 So.2d 432, 434 (Ala. 1986).
We hold that the landfill contract is governed by the bid law and that it did not fall within any of the exemptions, and that the *Page 230 
defendants did not substantially comply with the bid law. The record shows that others were interested in making proposals and that there were alternative landfill sites at the time the contract was executed.
We hold that, in order to meet the demands of constitutional due process, local governments exercising the authority delegated to them by the Solid Wastes Disposal Act must give notice to the public of actions contemplated under that Act and must provide an opportunity for citizens to be heard, either in favor of or in opposition to such actions. We further hold that actions taken by local governments under the Solid Wastes Disposal Act, and contracts entered into pursuant to that Act, are subject to the provisions of the Competitive Bid Law. Because in entering the contract the Commission violated both of these requirements, the contract is void.
The judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.