ALMON, Justice.
TransAmerican Waste Industries, Inc., appeals from a summary judgment holding that the public notices of three meetings of the Chilton County Commission did not meet the minimum notice requirements of Ala.Code 1975, §§ 22-27-47(0 and 22-27-48(a). At one of those meetings, the Commission modified its solid waste management plan, and at the other two meetings it gave local approval for a modification of the permit for the Chil-ton County sanitary landfill. The purpose and effect of those modifications was to transfer ownership and management of the landfill to TransAmerican and to expand and otherwise modify its operation.
Eight individual residents of Chilton County and S.A.V.E., a nonprofit corporation “organized under Alabama law for the protection of Chilton County, Alabama, and its public water supply,” filed an action against TransAmerican; Chilton County, its Commission, and the individual commissioners (collectively referred to herein as “Chilton County”); and the director of the Alabama Department of Environmental Management (“ADEM”). The complaint sought relief against the transfer and expansion of the landfill, but the circuit court entered a summary judgment for the defendants on all counts except the three — counts three and four and part of count five — that sought relief based on allegations of improper notice as mentioned above. TransAmerican[1] appeals from the summary judgment against it on those three counts, and the plaintiffs appeal from the summary judgment for the defendants on the remaining counts.

TmnsAmerican’s Appeal

Title 22 of the Alabama Code of 1975 pertains to “Health, Mental Health, and Environmental Control.” Chapter 27 of that title governs “Solid Waste.” Article 3 *349 (§§ 22-27-40 through -49) of that chapter is a codification of 1989 Ala. Acts, No. 89-824, p. 1638, and is entitled “Solid Waste Management Plan.” Section 22-27-45 of that article requires ADEM to develop a state solid waste management plan, and § 22-27-47 requires each county (and municipalities that elect to do so) to develop a local solid waste management plan. Pursuant to § 22-27-47, Chilton County had implemented a plan before these events occurred.
Section 22-27-47(f) provides:
“Prior to final adoption or amendment of a plan, the jurisdiction shall afford the public an opportunity to present data, views and arguments thereon, orally or in writing. The public comment period shall be no less than 30 days in length and shall include at least one public hearing. Notice of the public comment period shall be published at least once in a newspaper of general circulation in the jurisdiction and in the official gazette, if any, of the jurisdiction. Notice of the inclusive dates of the public comment period and the date of the public hearing may be combined in the same publication. Notice of the time and place of the public hearing shall be published at least 30 days, but not more than 45 days prior to the date of said hearing. Any published notice shall contain a brief description of the proposed plan, and shall identify a location where copies of the plan shall be available for inspection during normal business hours, and shall also identify a contact person from whom interested persons can obtain additional information or copies of the proposed plan. The plan, including any revisions, subsequently submitted for adoption shall be accompanied by a document containing written responses to comments made during the comment period.”
(Emphasis added.)
On July 29; August 5, 12, 19, and 26; and September 2 and 9,1994, the following notice was published in the Clanton Advertiser (Clanton is the county seat of Chilton County and the largest municipality in that county):
“PUBLIC HEARING NOTICE
“MODIFICATION OF SOLID WASTE PLAN
“The Chilton County Commission will conduct a public hearing on Monday September 12, 1994, at 10:00 A.M. at the Chil-ton County courthouse, Clanton Alabama, to solicit public comment concerning the county solid waste management plan- as required by Alabama law 89-824 (Holley Act). The public Hearing will involved [sic] the topics of landfill Management and Service Area Expansion.
“Public comments will be received, and copies of the proposed modification will be available for review, from July 27 to September 12,1994 at the County Commission Office. Written comments should be addressed to the Chairman, Chilton County Commission, P.O. Box 1945, Clanton, Alabama.”
The plaintiffs contend in count three that this notice of the hearing on the proposed modification of Chilton County’s solid waste management plan was deficient. However, the only provision of the statute that arguably was not satisfied by this notice was the requirement that it contain a “brief description of the proposed plan.”
Similarly, § 22-27-48(a), in pertinent part, requires a county to give notice of, and an opportunity to be heard on, any proposal to modify a solid waste disposal permit:
“Any determination by the local governing body of the proposed issuance of or modification of a permit for a new or existing solid waste management site or the proposal to contract for any services described in the solid waste management plan, shall be made in a public meeting only after public notice of such application or proposal and an opportunity for public comment is provided.
“In providing public notice of any application or proposal regarding any services described in the solid waste management plan, the local government shall at a minimum hold at least one public hearing thereon, notice of the time and place of which shall be given by one publication in a newspaper of general circulation in the *350 municipality and in the official gazette, if any, of the jurisdiction. Furthermore, such notice shall be given at least 30 days but not more than 45 days prior to the proposed date of said hearing. Each notice published in compliance with this section shall contain at a minimum a description of the proposed action to be considered, its relevance to and consistency with the local solid waste management plan and shall identify a contact person from' whom interested persons can obtain additional information and can review copies of both the local plan and the application or proposal to be considered. All pertinent documents shall be available for inspection during normal business hours at a location readily accessible to the public....”
(Emphasis added.)
The County published on July 29; August 5,12,19, and 26; and September 2, 9,16, and 23, the following notice of a hearing to be held on September 26 concerning a proposed modification of the landfill permit:
“PUBLIC HEARING NOTICE
“The Chilton County Commission will conduct a Public Hearing on September 26,1994 at 6:30 P.M. at the Chilton County Courthouse, to solicit public comment regarding the renewal/modification of the permit for the Chilton County Sanitary Landfill (Permit No. 11-01R). The permit to operate the facility is being renewed through the Alabama Department of Environmental Management, and at the same time is being modified to increase the volume of waste that can be accepted due to an increased service area. ■ Public comments will be received at the Public Hearing and an information sheet explaining the permit renewal/modification will be available for review at the County Commission Office from July 27, 1994 to September 28, 1994. 7/29, 8/5, 8/12, 8/19, 8/26, 9/2, 9/9, 9/16, 9/23 1994”
Count four seeks a judgment declaring that this notice is deficient for failure to describe more fully the actions to be taken at the September 26 meeting.
Again, on January 27; February 3, 10, 17, and 24; and March 3 and 10, 1995, a notice was published in the Clanton Advertiser on this matter. It reads:
“PUBLIC HEARING NOTICE
“The Chilton County Commission will conduct a Public Hearing on March 13, 1995 at 10:00 A.M. at the Chilton County Courthouse, to 'Solicit public comment regarding the modification of the permit for the Chilton' County Landfill (Permit No. 11-01). The permit is being modified through the Alabama Department of Environmental Management to increase the volume of waste that can be accepted at the facility, to increase the service area, and to construct a Subtitle D disposal -cell within the boundary of the permitted property. Public comment, both oral and written, will be received at the Public Hearing. Written comments concerning this matter should be addressed to: The Chairman, Chilton County Commission, P.O. Box 1948, Clanton, Alabama 35045. An information sheet explaining the permit modification and conversion of the facility to comply with provision [sic] of Subtitle D of the Resource Conservation and Recovery Act will be available at the County Commission Office from January 27, 1995 to March 13, 1995. 1/27, 2/3, 2/10, 2/17, 2/24, 3/3, 3/10 1995”
Count five attacks this notice as giving insufficient detail.
Under the circumstances of this case, the lack of further detail in the notices is not a ground upon which to set aside the actions of the Commission in modifying its solid waste management plan and in giving its approval to a renewal of the permit for the operation of the Chilton County landfill. The notices of the September 12 hearing unambiguously stated that the Commission proposed to modify its solid waste management plan to address the questions of “landfill, management and service area expansion.” The notices of the September 26 hearing stated that the Commission proposed to address “the renewal/modification of the permit for the Chilton County Sanitary Landfill” *351 and gave further details, including the facts that the permit was being renewed through ADEM and simultaneously modified “to increase the volume of waste that can be accepted due to an increased service area.” The-notices of the March 13 hearing stated that the modification of the permit would be considered and gave further details, including the facts that the daily volume of waste and the landfill service area would be increased and a Subtitle D cell would be constructed.
The Commission complied generally with the statutory requirements for plan and permit modification. As to the plan modification, the notices provided for a public comment period “no less than 30 days in length.” The Commission published notice of the public hearing “at least 30 days, but not more than 45 days prior to the date of said hearing.” Instead of a 30-day comment period, the Commission provided for a period from July 27 through September 12. The notices continued to run throughout the comment period, including the last publication of the newspaper before the hearing. The fact that the notices were published more frequently than the statute required offsets any deficiency caused by the brevity of the descriptions. The notice of the September 12 hearing ran seven times, and the notice of the September 26 hearing ran nine times. The fact that on seven dates the two notices were running in the same newspaper would also tend to call attention to them.
There had been public controversy over the Chilton County landfill, so even the brief descriptions in the first two notices should have alerted an interested reader to the significance of the hearings. Before these notices were published in the Clanton Advertiser, numerous articles and editorials in the same newspaper had fully described the problems facing Chilton County in regard to its landfill and its solid waste disposal problem. We find in that newspaper 31 articles and editorials concerning the landfill during the first half of 1994. These articles discussed the problems caused by the impending applicability of the Subtitle D regulations. They also publicized Chilton County’s proposal to transfer the landfill to TransAmeri-can. The notoriety of Chilton County’s efforts to resolve these problems provides a context in which the notices appeared and makes the mere mention of proposed modifications to the solid waste management plan and the landfill permit carry more meaning than they would if the modifications were occurring in the absence of such public discussion of the issue.
The notices of the permit modifications did not state their “relevance to and consistency with the local solid waste management plan,” § 22-27-48(a). However, this omission is offset by the fact that the plan was being modified at the meeting two weeks before the September 26 hearing on permit renewal and modification and the fact that the notices of the September 12 plan modification were published in the same newspapers as the notices of the September 26 permit modification. Because the plan was modified before the first permit modification precisely to allow for the permit modification, and because there was sufficient notice of the plan modification, the failure of the notices of the September 26 hearing to expressly address the “relevance to and consistency with” the plan is not a significant departure from the statutory requirements. Similarly, the failure of the notices of the March 13 hearing to mention “relevance to and consistency with” did not so deprive the public of the statutorily required notice as to void the entire proceeding. There is no secret of the relevance of these permit modifications to the solid waste management plan or their consistency with it — they are crucial to its implementation.
At the March 13, 1995, hearing, many interested citizens were present to object to the permit modification. The only objection that has come to our attention relates to the increased traffic on the roads to the landfill.[2] That objection was brought to the Commis *352 sion’s attention at the March 13 hearing. If the Commission had deemed that to be a valid objection to the proposed increase in volume, it could have declined the requested increase from 300 tons per day to 1500 tons per day or could have approved a lesser increase. The fact that this was the only objection raised when the public did attend a modification hearing weighs heavily against a holding that the failure to give more detailed notice of the matters to be addressed at the hearings fatally tainted the entire process.
The modifications of Chilton County’s plan and its permit were triggered by the effect of Subtitle D of the Resource Conservation and Recovery Act, 42 U.S.C. § 6941 et seq. An affidavit of Tom J. Fatjo, Jr., the chairman of TransAmerican, describes the problems Chil-ton County was attempting to address with the transfer to TransAmerican of the landfill and describes TransAmeriean’s need for the Subtitle D modification to continue to operate the landfill:
“The application to modify the permit submitted Tin] or about January of 1995 [the subject of the March 13, 1995, hearing] is solely for the purpose of constructing the Subtitle D cell within the currently permitted landfill area.
“The purpose of the development of the Subtitle D cell on the existing permitted site is to comply with applicable rules and regulations of the Alabama Department of Environmental Management, Sections 335-1-1 et seq. Without the development of the Subtitle D cell, TWI will be unable to accept solid waste after October 9,1997, or when the current vertical expansion capacity is exhausted, whichever occurs first.
“TWI proposed in 1994 to operate and expand the Chilton County landfill, which could no longer be operated economically by the county. Increasingly stringent environmental regulations have made single county landfills impractical in most counties, and the regional landfill in Perry County — to which Chilton County had planned to transport its waste — had recently been blocked by local opponents. The county faced an April 8,1994, deadline to close its landfill or find another operator.
“To make this transaction economically feasible, TWI proposed to expand the landfill vertically while a state of the art Subtitle D cell was constructed on the permitted property. Subtitle D regulations mandate stringent environment safeguards for .the disposal of nonhazardous municipal solid waste, including costly design improvements such as plastic, or geosynthetic landfill liners (laid on top of a compacted clay liner, and covered with perforated plastic pipe and a two-foot thick sand layer); leachate collection and treatment systems; extensive groundwater monitoring; and compliance with strict closure/post-closure regulations. TWI also intended to increase the service area and tonnage for the landfill in order to make the operation cost-effective.
“TWI proposed to make a number of improvements at the facility and to provide additional benefits to the county. It accepted responsibility for closure and post-closure costs which the county would otherwise have had to finance. The cost for closure is estimated to be approximately $783,000, and the cost for 30 years of post-closure is estimated to be $607,500 according to an independent report. TWI has also offered to remediate the closed portion of the landfill. TWI had already added new, all-purpose roads and improved vegetative cover at the landfill, and has taken measures to decrease litter at the site.
“TWI estimates that in addition to the $100,000 that the county received for the site, its agreement to operate the facility will save the county millions of dollars. In addition, disposal charges and taxes to Chilton County citizens should be substantially lower than what would be required if the county’s waste had to be transferred to another landfill.
“Without expansion of the landfill operation to a Subtitle D cell, the existing permitted vertical expansion is estimated to be full by the first or second quarter of 1996.”
Clearly, Chilton County residents have a need to dispose of solid wastes generated in that county. The urgent need for action on *353 the landfill must be weighed against any need to set aside the Commission’s actions based on a perceived failure of the notices to sufficiently describe the proposed plan and permit modifications.
The following quotations from the statute indicate the purposes of the statute and show that, while public notice of and participation in the permitting process is important, the legislature also considered it important to provide for a process by which the public need for safe disposal of waste can be met:
“ § 22-27-40. Legislative findings.
“The legislature finds that:
“(1) The state, its subdivisions and the nation face an emerging crisis in solid waste management;
“(2) Proper waste management is an increasingly complex issue involving the need for reducing the volumes of waste requiring disposal; properly managing wastes to reduce the likelihood of both short-term and long-term threat to human health and the environment, and assuring that adequate, environmentally secure, waste management and disposal facilities will be available at reasonable costs to accommodate wastes generated in the state;
“(3) Provision for necessary systems, facilities, technology and services for solid waste management and resource recovery is a matter of important public interest and concern, and action taken in this regard will be for a public purpose and will benefit the public welfare;
“(4) Solid waste management problems are potentially statewide in scope and necessitate state and local action through the development and implementation of comprehensive long-range plans for solid waste management which recognize the conditions of the state now and those which can be expected in the foreseeable future, and which serve to assure that the state as a whole and local jurisdictions in particular will meet their long term solid waste management needs;
“(5) Proper planning for solid waste management must include the evaluation of facility sites based on a broad group of factors including but not limited to, environmental conditions, local needs for waste management, social and economic impacts on the host community, the availability and impact on public services, and the consistency of a proposed facility with any final solid waste management plan;
[[Image here]]
“(9) Current conditions and pending federal regulatory requirements likely will increase the costs of landfill disposal, prompt the closure of many landfills in the state and likely change the methods of solid waste management in the state away from the present system of management by individual cities and counties and toward the development of larger facilities which must be capable of meeting the needs of several jurisdictions. Given this evolving situation, the legislature concludes that a concerted solid waste management planning program is essential to address the imminent and future needs of the state.”
“ § 22-27-41. Legislative purpose.
“The purpose of this article is to protect the public health and the state’s environmental quality and to serve the public by recognizing the responsibilities of units of local government for the orderly management of solid wastes generated within their jurisdictions, and to require that decisions about the management of solid wastes shall be based on comprehensive local, regional and state planning. The terms and obligations of this article shall be liberally construed to achieve [the] remedies intended.”
“ § 22-27-42. Legislative intent.
“In furtherance of the policies and purposes set forth herein, it is the intent of this legislation:
[[Image here]]
“(2) To put in place the necessary procedures so that an effective and integrated statewide network of solid waste management facilities may be planned, developed *354 and operated for the benefit of the people of the state;
[[Image here]]
“(4) To facilitate the siting of solid waste management facilities as required to meet present and projected state and local needs;
[[Image here]]
“(7) To assure public involvement in the development and implementation of plans for the management of solid wastes;
“(8) To encourage private industry to continue to play a key role in the state’s solid waste management programs;
“(9) To assure that solid waste management facilities and services are provided to state residents in a manner which assures their availability at reasonable costs.”
These purposes are better served in this case by holding the notices to be sufficient rather than requiring, after the fact, some additional quantum of detail in the descriptions of the proposed actions.
The plaintiffs cite Brown’s Ferry Waste Disposal Center, Inc. v. Trent, 611 So.2d 226 (Ala.1992), arguing that it supports the summary judgment in their favor on counts three, four, and five. However, in that case, Limestone County had contracted with Brown’s Perry for Brown’s Ferry to develop and operate a new sanitary landfill in Limestone County, but the county commission published no notice and held no hearing. This Court held: “Because the Commission failed to supply any notice to the public and totally failed to establish any opportunity for the citizens to be heard, the contract is, as the trial court held, null and void.” 611 So.2d at 228. In this case, there was notice and an opportunity to be heard — the plan and permit modifications were adopted at county commission meetings at which hearings on the proposed modifications had been scheduled. At the third such hearing, interested members of the public appeared and were given the opportunity to express their objections.
Absent a showing of some serious objection to the transfer, expansion, and modification of the Chilton County landfill that was not presented to the Commission because of lack of notice, we decline to hold that the notices in this case were so deficient as to require that the permits be set aside and the whole process of providing for the disposal of Chilton County’s waste and the regulation of its landfill be started all over again. The summary judgment for the plaintiffs on counts three and four and part of count five is due to be reversed, and a judgment rendered for TransAmerican.
TransAmerican argues that a limitation on the service area of the landfill would violate Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep’t of Natural Resources, 504 U.S. 353, 112 S.Ct. 2019, 119 L.Ed.2d 139 (1992). Because of our holding that the notices were not fatally insufficient and that TransAmeri-can may therefore operate the landfill as it has requested, we pretermit discussion of the merits of this argument.

The Plaintiffs’ Cross Appeal

The plaintiffs argue first that the May 18,1994, sale of the permit and the land violated §§ 22-27-47(f) and 22-27-48(a), because, they say, those sales constituted a modification of the plan and the permit without notice and a hearing. On May 18, 1994, the chairman of the Chilton County Commission executed a bill of sale and a warranty deed. By the bill of sale the County transferred to TransAmerican the permit to operate the landfill
“subject to the approval and transfer requirements of the laws of the State of Alabama and of the United States of America and with all requirements, rules and regulations in connection therewith, as well as all state and federal agency requirements for approval of such transfers.”
By the warranty deed the County conveyed-to TransAmerican the real property, 95 acres, on which the landfill exists. The complaint similarly challenges an April 18, 1994, contract between the parties to transfer the landfill. The circuit court, in entering the summary judgment for the defendants on the challenges to these transactions, stated that “no notice is required for the sale of real property alone” and that, although the transfer of the permit would constitute a modification of it, “The agreement to move forward *355 with the process of obtaining the proper approval would not, however, be subject to the notice provisions.”
The circuit court also stated that “the documents executed in April and May 1994 between Chilton County and TWI were subject to the notice and hearing process at a later time and were not subject to the provisions of Sections 22-27-47® and 22-27-48(a) at the time they were executed.” We agree with the circuit court that these transactions did not require notice, because they were expressly subject to applicable laws and regulations, which would include the notice and hearing requirements discussed above.
The plaintiffs also argue that the sale of the landfill constituted a “proposal to contract for any services described in the solid waste management plan,” § 22-27-48(a), and that therefore notice and a hearing were required before the execution of the documents. We hold that the transfer is not a “contract for services” as contemplated in § 22-27-48(a). After the transfer, Trans-American would not be performing services for Chilton County, but would simply be operating a privately owned landfill. See Beavers v. County of Walker, 645 So.2d 1365 (Ala.1994), for an example of a contract for services under § 22-27-48(a).
We note that the Court in Brown’s Ferry, supra, affirmed the voiding of a contract to develop and operate a landfill. The facts of that case and those of Ex parte Lauderdale County, 565 So.2d 623 (Ala.1990), arose before the passage of Act No. 89-824, which adopted the provisions now found at Article 3, § 22-27-41 et seq., for solid waste management plans, including the notice and hearing requirements at issue here. Thus, the statutory notice procedures were not then in place and no notice or opportunity to be heard was given.
The notice and hearing requirements for final modification provide sufficient opportunity for affected citizens to voice their objections and present any substantive problems with the transfer or modification. To require such notice and hearing without a contract could present an untenable situation for a county that is seeking to effectively manage its solid waste problems: if it proceeds with a hearing without having a contractual commitment from the party to whom it proposes to transfer the landfill, that party could refuse to complete the transaction after a hearing and a modification of the permit. In Carter v. City of Haleyville, 669 So.2d 812 (Ala.1995), such a mutual commitment was accomplished by a letter of intent.
Thus, although Chilton County was contractually committed to convey the permit and the landfill and to use its best efforts to obtain a modification of the plan and the permit, that commitment was contingent upon compliance with applicable laws and regulations. If, during the course of the hearings, any legitimate, substantial objections to the transfer or the proposed modifications had arisen, the Commission would have been duty-bound to respond appropriately, including, if necessary, disapproving the proposed modification of the plan or the permit.
In their cross appeal, several of the plaintiffs make an argument pertaining to the March 13,1995, permit modification insofar as it allowed the development of Subtitle D compliant cells within the permitted area of the landfill. However, the circuit court held that such a change comes within the following exception in § 22-27-48(a) for a modification of a permit:
“The application of the plan for local approval shall not apply [sic] to simple renewals of a permit which is to be otherwise unchanged. Further, there shall be no requirement for local review and approval of permit modifications for the limited purposes of changing liner and leachate collection design, changes in waste streams from within the facility’s designated service area, changes in sequence of fill, changes to incorporate new technology and changes intended to bring a facility into compliance with statutes and regulations.”
(Emphasis added.)
No error is shown as to this holding. On the contrary, there is evidence that ADEM treats the development of Subtitle D compliant cells as “changes to incorporate new technology and changes intended to bring a facility into compliance with statutes and regulations.” Thus, the plaintiffs incorrectly ar *356 gue that the summary judgment for the defendants was incorrect insofar as it depends upon a holding that local approval is not required to bring a landfill into compliance with Subtitle D.
The complaint also alleges that Chil-ton County’s transfer of the landfill and the permit to TransAmerican was a grant to TransAmerican of an exclusive franchise in violation of § 22 of the Alabama Constitution of 1901 and § 41-16-50(a), Ala.Code 1975 (the Competitive Bid Law). In Beavers v. County of Walker, 645 So.2d 1365 (Ala.1994), this Court held that a contract between Walker County and Browning-Ferris Industries of Alabama, Inc. (“BFI”) violated the Competitive Bid Law.[3] In that contract, Walker' County and the Walker County Solid Waste Disposal Authority agreed with BFI for BFI to build a landfill in the county and for the County to assist BFI in its efforts to obtain approvals and permits. The County and the Authority agreed not to operate a landfill after closing the nearly full county landfill, and they agreed that
“neither of them will enter into any agreement or other arrangement of any kind with any other person or entity relating to the development, use or operation of any such Solid Waste disposal facility within the County.”
645 So.2d at 1375. The Court held that this provision improperly granted an exclusive franchise to BFI without the contract’s having been competitively bid, because by this provision the contract expressly prohibited the County and the Authority from entering into with any other party “an agreement or arrangement such as the franchise granted to BFI,” id., and thereby granted a monopoly to BFI.
No such provision appears in the contract between Chilton County and TransAmerican. “It is well settled that in the absence of an express provision, the grant of a franchise will not be construed as exclusive.” Beavers, 645 So.2d at 1875. The circuit court correctly entered the summary judgment for the defendants as to this claim.
We have considered the plaintiffs’ other arguments as to the remaining counts of the complaint and have found insufficient merit in them to justify lengthening this opinion. We affirm the summary judgment for the defendants.
Before filing this appeal, TransAmerican moved for a stay of the circuit court’s judgment insofar as it held that the permit modifications were ineffective and thereby reinstated the 100-tons-per-day limitation under which the landfill operated before the permit modifications. In response, the circuit court entered a partial stay that allows Trans-American to accept 300 tons per day and imposed other conditions. Because we reverse the judgment insofar as it grants partial relief to the plaintiffs, we hereby dissolve the stay.
The summary judgment is affirmed insofar as it favors the defendants and is reversed insofar as it favors the plaintiffs on counts three, four, and five. A judgment is hereby rendered for the defendants on these three counts.
AFFIRMED IN PART, REVERSED IN PART, AND JUDGMENT RENDERED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY, and COOK, JJ., concur.
SEE, J., concurs in the result.

. Although Chilton County and ADEM do not appeal, their absence is insignificant. The judgment for the plaintiffs principally awards declaratory relief, so a reversal at TransAmerican’s request would inure to the other defendants’ benefit.

. There are some references in the record to possible leakage from the site, but that is a matter for ADEM to consider when renewing the permit or supervising TransAmerican's performance under it. TransAmerican has undertaken responsibility to prevent and correct any such migration of waste from the site.

. The plaintiffs in Beavers raised issues similar to some of the issues raised here, but the Court did not address them because of its holding that the contract violated the Competitive Bid Law.