Halee Denise Isler, the wife, appeals from a judgment of the Henry Circuit Court divorcing her from James Paul Isler, the husband.
The parties were married in January 2000 and they had one child, who was born in May 2001. In December 2001, the husband left the wife. On January 18, 2002, the husband filed a complaint for a divorce in the Henry Circuit Court, alleging incompatibility and an "irrevocable" breakdown of the parties' marriage. In his complaint, the husband did not request that he *Page 731 
be awarded any property and he did not request custody of the parties' child. On February 1, 2002, the wife was served with the husband's complaint. On February 5, 2002, the wife filed three motions: (1) a motion for a temporary restraining order, (2) a motion for a protective order, and (3) a motion for temporary custody of the parties' child. On February 7, 2002, two days after the wife filed her preliminary motions, the trial court made a notation on the case action summary sheet, stating "[t]his case is set for hearing on March 1, 2002 at 8:30 AM."
On February 12, 2002, the wife filed an answer to the husband's complaint and a counterclaim. In her counterclaim, the wife requested that the trial court award the parties joint legal custody of their child, that it award her primary physical custody of the child, that it award the husband liberal visitation rights, and that it award her child support. She also requested that the trial court award her alimony and attorney fees and that the trial court equitably divide the marital property and the marital debts. The husband filed an answer to the wife's counterclaim, contesting the wife's requests regarding custody, attorney fees, and alimony, and admitting that there should be a division of the marital property and the marital debts.
At the hearing on March 1, 2002, the following discussion occurred:
 "[WIFE'S COUNSEL]: Judge, my understanding today is that the only issue that we are here for today is on the motions that I have filed. We —
 "THE COURT: Well, we'll just do everything in one big sweep.
"[WIFE'S COUNSEL]: One big sweep.
 "[HUSBAND'S COUNSEL]: Well, I think we've pretty much got it settled. We don't have any real big issues left. It will probably take us a couple of minutes, don't you think, to talk to our clients or —
 "[WIFE'S COUNSEL]: Judge, my only concern right now, is he submitted an income affidavit. He is also self-employed. I wanted to sit down with my client and propose a settlement agreement and submit it to opposing counsel. And I would respectfully request, Judge, if we could just have a temporary custody and temporary support, pending the outcome of this, I think it's —
 "[HUSBAND'S COUNSEL]: Well, she's got custody, and my client hasn't tried to take the child away from her, is not going to take the child away from her. He has been giving her money. I mean, he's been doing all the right things. I told him what he needed to do. And my understanding is, today, we are here either to settle it or to have a trial.
 "THE COURT: Why don't y'all take a few moments and see if you can settle it? Because if not, we will end up probably trying it twice. Custody is always the main thing.
 "[WIFE'S COUNSEL]: Yes, sir. And they have consented to agree to custody.
 "[HUSBAND'S COUNSEL]: Yeah. We have already done that. And there is almost no property. And we have given them everything, the house, the furniture and everything else.
"THE COURT: So, I guess a child support computation.
"[HUSBAND'S COUNSEL]: Rule 32 — I mean —
 "THE COURT: Why don't y'all see if you can — have you gotten it down to the point, you think, all but the child support? *Page 732 
 "[WIFE'S COUNSEL]: The only issue right now, from my understanding, that may be a problem, is the issue of what is maybe his true income, if he's self-employed. And the only other issue, Judge, is there is a house that is deeded in both of the names. He has been willing to give her the house, but it's her ability to maintain that house payment.
 "[HUSBAND'S COUNSEL]: And my comment to that is, we are giving her the house, we are giving her everything in the house, the furniture. And if she can't afford it, she can sell the house. Or in lieu of that, she can refinance the house and get a lower payment. I mean, I don't know what else we can do, Judge. Either one side gets the house, or the other side gets the house. Do y'all not want the house or —
 "[WIFE'S COUNSEL]: Judge, I think it's — my client would be willing to go ahead and sell the house. It's just her ability to maintain that house payment pending the sale. How much is the house payment?
"[WIFE]: It's five hundred and sixty dollars a month.
 "THE COURT: If y'all would like to, we can take testimony on those issues, we can get in the record and take testimony on those issues, unless y'all think there might be something that would be agreed to differently. A lot of times, there is just no good way to — just something has to be done.
"[WIFE'S COUNSEL]: Can we have five minutes?
"THE COURT: Yeah. Y'all take a few minutes.
"[HUSBAND'S COUNSEL]: And I will be right here.
 "THE COURT: Because my judgment may not be as y'all's collective judgment, is what I'm saying.
"[WIFE'S COUNSEL]: Yes, sir.
 "[HUSBAND'S COUNSEL]: Your judgment is always good, Judge, but it's not maybe what the clients want.
"THE COURT: It may not fix everything.
"[WIFE'S COUNSEL]: Yes, sir. Thank you, Judge."
Upon returning to the courtroom from a recess, the parties' attorneys briefly discussed the amount of the parties' utility and house payments, after which the transcript of the hearing reflects the following:
 "[HUSBAND'S COUNSEL]: I guess we need to just put it on the record, Judge. Let me ask opposing counsel if there are any witnesses in here besides the parties?
"[WIFE'S COUNSEL]: Yes, there are.
 "[HUSBAND'S COUNSEL]: Your Honor, we would invoke the rule at this time.
 "THE COURT: All right. Any persons who are testifying, if you can step out in the hall. And I believe, [husband's counsel], y'all are the movants, so, you may proceed. And if we can, let's try to stay with the disputed areas if at all possible.
 "[HUSBAND'S COUNSEL]: All right, sir. We'll call Halee Denise Isler.
 "THE COURT: Ms. Isler, if you can take the stand right up here.
 "[WIFE'S COUNSEL]: And, Judge, again, for the record, it is my understanding that the only reason that I was here today — my understanding was to litigate the motion for protective order and motion for temporary custody and support. And I would respectfully request that you continue it, to allow me time to adequately prepare for trial. I am here today to litigate those two *Page 733 
issues alone and am not prepared to go forward on the trial.
 "THE COURT: The setting order says this case is set for hearing for March 1, 2002 at 8:30. It doesn't say just motions or — like I said, all we'll do, is we'll try the same case twice if we do it that way. I just try cases one time and set them immediately the next term that is up, so we can get them done and get on to the next case. There are just too many of them.
 "And this is a great day to try this case, because we don't have as many. I say a great morning, because it shouldn't be a great day. Next time, y'all would have to sit all day waiting on all these other cases, and it's — [the husband's counsel] is here from time to time, and it's usually a little busier than — today is just like a day off.
 "[HUSBAND'S COUNSEL]: And I have sat here all day, Judge, until dark thirty, and we had to continue it — ran out of time.
 "THE COURT: Yeah. That can happen. So, it's better to start while the time is available."
The trial court proceeded to conduct the trial of the case. A few days after the trial, the trial court entered a judgment divorcing the parties; awarding primary custody of the parties' child to the wife and awarding the husband visitation; awarding the wife the parties' home and furnishings; and ordering the husband to pay the wife $100 per month to assist with the house payment. The trial court also determined that the husband's gross monthly income was "$1,485 regular salary and $200 per month from Southeastern Taekwondo Academy." The trial court ordered the husband to pay the wife $290 per month as child support. The wife appealed.
The wife argues that the trial court abused its discretion by conducting a trial on the merits on March 1, 2002, and that it abused its discretion by ordering overnight child visitation.
One of the disputed issues that the wife was concerned about, and on which she based her request that the trial court continue the trial, was the husband's self-employment income. On his CS-41 form ("Child Support Obligation Income Statement/Affidavit"), which was unverified, the husband did not reflect any income from self-employment. The husband testified that he was employed by the Abbeville Police Department and that he operated Southeastern Taekwondo Academy. The husband testified that he had monthly gross income of $1,485 from the police department. He stated that he did not receive a salary from the Taekwondo Academy and that the funds paid by students at the Academy were used to buy more equipment for the Academy. The husband stated, "I don't make no profit off the school. I do it because I love to teach." However, the husband later admitted that he had some income from the Academy, that he used money from the Academy's bank account for entertainment purposes, and that he had paid the wife some funds from the Academy's bank account for child support. He also stated that, in addition to using funds from the Academy's account to pay for personal expenses, he took "business" friends out for lunch as many as "ten times a month to zero [time] a month" and that he paid $20 to $25 for each lunch, using funds from the Academy's account to pay for those meals. He also admitted that he had used funds from the account to purchase jewelry for a friend.
The husband testified that he could not determine the average monthly expenses for personal items that he paid from the Academy's bank account, but he stated *Page 734 
that the amount of those expenses could be determined from his records. The wife testified that the husband spent at least $50 per week from the Academy's account on personal items. The wife also introduced bank statements from the Academy reflecting monthly deposits of $4,033 in December 2001 and $1,619 in January 2002. The December statement reflected a balance of $2,794 in the Academy's bank account, but the husband attributed that balance to a loan from his father.
"It is well-settled law in this state that litigants, once in court, must keep track of their case, know its status and ascertain for themselves when their case will be tried." Robinson v. Walker Builders,Inc., 491 So.2d 966, 967 (Ala.Civ.App. 1986). However, in this case, the trial court's order setting the case for a hearing was entered only three weeks after the husband had filed his complaint, only one week after the wife had been served with the complaint, before the wife had filed her answer and counterclaim, before time had expired for the wife to file an answer, and almost immediately after the wife had filed three motions for interim relief. The hearing was set for a date only three weeks after the date of the notice. In Champion v. Champion, 693 So.2d 510 (Ala.Civ.App. 1997), this court noted:
 "Our supreme court stated the following in Opinion of the Justices, No. 238, 345 So.2d 1354, 1355 (Ala. 1977):
 "'Due process of law means notice, a hearing on the merits of the controversy in accord with that notice, and a judgment entered in accord with that notice and hearing.'"
693 So.2d at 511. As our Supreme Court further stated in Ex parteFountain, 842 So.2d 726 (Ala. 2001):
 "'[P]rocedural due process, protected by the Constitutions of the United States and this State, requires notice and an opportunity to be heard when one's life, liberty, or property interest are about to be affected by governmental action.' Brown's Ferry Waste Disposal Ctr., Inc. v. Trent, 611 So.2d 226, 228
(Ala. 1992).
 "'Procedural due process, as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, § 6, of the Alabama Constitution of 1901, broadly speaking, contemplates the rudimentary requirements of fair play, which include a fair and open hearing before a legally constituted court or other aurhtority, with notice and the opportunity to present evidence and argument, representation by counsel, if desired, and information as to the claims of the opposing party, with reasonable opportunity to controvert them.'"
842 So.2d at 729 (quoting Ex parte Weeks, 611 So.2d 259, 261 (Ala. 1992) (emphasis omitted)).
Rule 40(a), Ala.R.Civ.P., provides, in pertinent part, that "[t]he trial of actions shall be set by entry on a trial docket or by written order at least sixty (60) days before the date set for trial, subject to the following exceptions: . . . (4) where a shorter period of time servesthe ends of justice in domestic relations cases." (Emphasis added.) Although the Alabama Supreme Court expressly allowed a shortening of Rule 40(a)'s 60-day notice requirement in Ex parte Medical Assurance Co.,,862 So.2d 645 (Ala. 2003), a case involving a declaratory judgment, we find the principles articulated by the Supreme Court in that case to be equally applicable in the present case. As our Supreme Court explained:
 "While Rule 40 vests considerable discretion in the trial court concerning the setting of cases for trial, see Rule 40(a), Committee Comments on 1973 Adoption, *Page 735 
the rule sets 60 days as the mandatory minimum time within which parties to an action must have notice of a trial setting. As shown above, however, the 60-day requirement is subject to certain exceptions. Rule 40(a)(7) provides that the 60-day limit is not applicable `where a shorter period of time is otherwise provided by law or these rules or agreed to by all the parties.'
 "In fact, the Alabama Rules of Civil Procedure do provide for a shorter period in a declaratory-judgment action. Rule 57, Ala.R.Civ.P., states, in part: `The court may order a speedy hearing of an action for declaratory judgment and may advance it on the calendar.' This rule clearly fits within the Rule 40(a)(7) exception to the 60-day notice requirement. The trial court, therefore, is not constricted to the 60-day notice requirement in a declaratory-judgment action. Yet even in a declaratory-judgment action, the trial court's discretion is not absolute. While there may be no mandatory minimum number of days provided for notice of a trial setting in a declaratory-judgment action, due process demands that the parties still have a fair chance to prepare for trial, to conduct discovery, to submit pretrial motions, and to conduct other necessary pretrial activities."
862 So.2d at 649.
We conclude that the trial court abused its discretion in shortening the time for notice of the trial setting; under the particular facts of this case, the notice shortening the time for trial did not sufficiently inform the wife that the trial court had shortened the time for trial and that it intended to conduct a trial on the merits on March 1, 2002. Because the trial court's judgment is due to be reversed regarding its decision to proceed with a trial on the merits, we do not need to address the wife's argument regarding overnight visitation.
The judgment of the trial court is reversed, and the cause is remanded for a new trial.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY and THOMPSON, JJ., concur.
PITTMAN, J., dissents.